UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| Max Geller | * |
| Plaintiff | * |
| | *   Civil Action No. |
| Versus | * |
| | * |
| City of Baton Rouge | * |
| Carl Dabadie, Jr., Chief of Police, Baton Rouge, and | * |
| Sid J. Gautreaux, III, Sheriff, | *   Judge: |
|     East Baton Rouge Parish | * |
| Louisiana State Police Officer John Doe One, | * |
| Louisiana State Police Officer John Doe Two, and | * |
| Louisiana State Police Officer John Doe Three | * |
| | * |
| Defendants | *   Magistrate Judge: |

**COMPLAINT FOR DAMAGES
FOR DEPRIVATION OF CIVIL RIGHTS**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Max Geller, alleges as follows, upon information and belief:

**INTRODUCTION**

1.

Plaintiff, Max Geller, seek damages for defendants' unlawful arrest, use of excessive force and denial of medical care by the Baton Rouge Police Department ("BRPD"), the East Baton Rouge Sheriff's Office ("EBRSO") and officers of the Louisiana State Police ("LSP"). Defendants' unconstitutional acts caused Max Geller to suffer head wounds, a concussion, arm and rib injuries, and continuing emotional distress. Defendants employed unconstitutional tactics to disturb, disrupt, infringe upon and criminalize Mr. Geller's constitutional rights to freedom of speech and assembly. Plaintiff requests damages pursuant to 42 U.S.C. sections 1983 and 1985, for violations of his rights under the 1st, 5th, 4th, 8th and 14th Amendments to the United

1

States Constitution. *See* Photograph of Max Geller's arrest and news article, Maya Lau, *Identical arrest reports for many Alton Sterling a red flag, legal experts say*, The Advocate, September 18, 2016, copy attached Exhibit 1.

## PARTIES

2.

Plaintiff, Max Geller, is a resident of New Orleans, who was brutally tackled and beaten by Louisiana State Police officers, on July 10, 2016, while peaceably protesting.

3.

Defendant, the City of Baton Rouge is a municipality of the State of Louisiana, domiciled in East Baton Rouge Parish, established pursuant to its Home Rule Charter and statutes, which has the capacity to sue and be sued. On information and belief, police officers of the City of Baton Rouge Police Department were at the intersection of East Boulevard and France Street and nearby locations when Max Geller was arrested, detained, denied medical care and incarcerated, and acted in concert with other defendants to deprive Mr. Geller of his civil rights.

4.

Defendant, Carl Dabadie, Jr. is the Chief of Police of the City of Baton Rouge, who is sued in his official capacity. Police Chief Dabadie is the highest-ranking officer of the Baton Rouge Police Department. As Police Chief, he is a policy maker for the Police Department and is responsible for directing, training and supervising all Police Department staff and officers. He set policies for the BRPD, directed the deployment of officers during the Baton Rouge protests and was aware of the continuing arrests and charging of protestors with violations of La. R.S. 14:97 and resisting arrest. Police Chief Dabadie in his official capacity, is vicariously liable for

torts and civil rights violations committed by his officers in the course and scope of their employment.

5.

Defendant, Sid J. Gautreaux, III, is the elected Sheriff of East Baton Rouge Parish, who is sued in his official capacity. As the Sheriff, he is responsible for directing, training and supervising all Sheriff's Office staff and officers. Sheriff Geautreaux is also responsible for operating, directing, supervising and staffing the East Baton Rouge Parish Prison, where Mr. Geller was incarcerated. Sheriff Gautreaux is the policymaker for the East Baton Rouge Parish Sheriff's Office. Sheriff Gautreaux directed the deployment of officers during the Baton Rouge protests and was aware of the continuing arrests. Sheriff Gautreaux, in his official capacity, is vicariously liable for torts and civil rights violations committed by his officers and the prison staff in the course and scope of their employment.

6.

East Baton Rouge Parish Sheriff's officers responded to the protests and participated in the arrest, detention, transportation, denial of medical care and imprisonment of Max Geller. On information and belief, officers and employees of the East Baton Rouge Parish Sheriff's Office were at the intersection of East Boulevard and France Street and nearby locations, and at the East Baton Rouge Parish Prison when Max Geller was arrested, detained, denied medical care and incarcerated, and acted in concert with other defendants to deprive Mr. Geller of his civil rights.

7.

A number of Louisiana State Police officers, whose identities are presently unknown, tackled and assaulted Max Geller as shown in Exhibit 1. The Louisiana State Police, which is a department within the Louisiana Department of Public Safety. Those Louisiana State Police

officers are hereby made defendants in this lawsuit individually, as LSP Officer John Doe One, LSP Officer John Doe Two, and LSB Officer John Doe Three. Plaintiff reserves the right to amend this Complaint, when the LSP officers who assaulted Mr. Geller are identified.

8.

Defendant, Louisiana State Police Officer John Doe One, who is sued individually, used excessive and unwarranted force in tackling, assaulting, restraining and battering Max Geller on July 10, 2016.

9.

Defendant, Louisiana State Police Officer John Doe Two, who is sued individually, used excessive and unwarranted force in tackling, assaulting, restraining and battering Max Geller on July 10, 2016.

10.

Defendant, Louisiana State Police Officer John Doe Three, who is sued individually, used excessive and unwarranted force in tackling, assaulting, restraining and battering Max Geller on July 10, 2016.

**JURISDICTION AND VENUE**

11.

This Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1331, 28 U.S.C. section 1343 and 28 U.S.C. section 1367 (supplemental jurisdiction), as plaintiff seeks redress and protection of his Constitutional rights under 42 U.S.C. sections 1983, 1985 and 1988, and under Louisiana tort law.

12.

Venue is appropriate in this judicial district, pursuant to 28 U.S.C. section 1391, because the defendants reside in this district and the events or omission giving rise to Mr. Geller's claims occurred in this district.

**STATEMENT OF FACTS**

13.

On Tuesday, July 5, 2016, Mr. Alton Sterling was shot and killed by Baton Rouge Police Department officers, leading to Max Geller protesting the Baton Rouge Police Department's conduct and seeking justice and demanding an independent investigation of Mr. Sterling's death and changes to the Baton Rouge Police Department's policies, procedures and practices.

14.

The protests continued Friday, July 8, Saturday, July 9 and Sunday, July 10, 2016. Throughout the protests, the Defendants responded in a militarized and aggressive manner. Police officers dressed in military gear, with gas masks, shin guards, face shields, brandishing assault weapons alongside heavy military vehicles advanced against protestors. Baton Rouge Police Department, Louisiana State Police and East Baton Rouge Parish Sheriff's Officers threatened non-violent protestors by pointing their weapons directly at them.

15.

On July 10, 2016, Max Geller and others drove from New Orleans to Baton Rouge to participate in a march protesting the death of Alton Sterling.

16.

Max Geller attended speeches near the State Capitol building and then walked with other protestors along the designated route for the march.

17.

Max Geller and other protesters walked to the intersection of East Boulevard and France Street, arriving at that location about 6:00 p.m.

18.

At that time, no vehicles were travelling on the streets at that location, other than police vehicles.

19.

Max Geller was part of a large crowd of peaceful protestors at that location.

20.

Max Geller complied with directives from police officers and moved to the edge of the street.

21.

Max Geller and other protestors locked arms and stood in a line peacefully.

22.

Police officers in riot gear approached Max Geller and yelled aggressively at him. Mr. Gellar was trying to video record the protests with his cell phone at that moment.

23.

At about 6:30 p.m., multiple police officers, including but not limited to, Louisiana State Police Officer John Doe One, Louisiana State Police Officer John Doe Two and Louisiana State Police Officer John Doe Three charged the line of protestors and tackled Max Geller. The officers threw Max Geller to the ground, slammed his head into the ground, held him down and kicked Mr. Geller.

24.

LSP Officers who were on top of Max Geller holding him down, shouted "stop resisting". Mr. Geller replied "I'm not resisting. I'm just really scared."

25.

Defendants arrested Max Geller and other protestors after Defendants had closed the public highway, such that there was no through traffic to obstruct, and therefore there could be no practical violation of La. R.S. 14:97.

26.

Mr. Geller lost consciousness, suffered multiple, bleeding cuts and abrasions to his face and head, injuries to his ribs and injuries to his arms and shoulders.

27.

Police officers, then, hand-cuffed Mr. Geller with wire ties, lifted by his arms and dragged him away from the intersection of East Boulevard and France Street. At that time, Mr. Geller was bleeding from his head injuries and was not responsive to his friends calling to him.

28.

As the police officers were dragging Mr. Geller near a SWAT vehicle, he was struck in the head by a rifle butt or another blunt object.

29.

Defendants used excessive force in attacking, battering, beating, dragging and assaulting Max Geller without provocation or the need for defense.

30.

Despite Mr. Geller's friends telling the police officers that were holding Mr. Geller that Max Geller was bleeding from his head and was not responding, the police officers did not have any of the nearby medical personnel exam or provide care to Mr. Geller.

31.

The LSP Officers who initially held Mr. Geller transferred him to other police officers who dragged him about another block to an area where several protestors were being held.

32.

Mr. Geller was ordered by police officers to sit on the ground, while still bleeding and disoriented. Despite his friends, again, telling that Mr. Geller was injured, the police officers did not ask any of nearby the medical personnel to examine or treat Mr. Geller for more than an hour.

33.

Max Geller was first seen by an East Baton Rouge EMS person at about 8:00 p.m., when an ambulance arrived at the area where Mr. Geller was being detained. The EMS person would not give Mr. Geller advice on whether he should go to a hospital or whether he might have a concussion.

34.

Mr. Geller was transported to by ambulance to Lady of the Lake Hospital Emergency with a police car following the ambulance.

35.

Two police officers were present throughout Mr. Geller's intake at the hospital, including being in the room when Mr. Geller was interviewed and examined by the Emergency Room

doctors and staff. While Mr. Geller was telling the doctors about the assault and his injuries, the police officers kept interrupting and telling doctors that the events recounted by Mr. Geller had not happened.

36.

Mr. Geller was handcuffed during the entire time at the hospital, including during a CT scan.

37.

Mr. Geller was treated for multiple injuries and received stiches for his head wounds at the hospital.

38.

Mr. Geller was not informed at the hospital that he had been diagnosed with a concussion, because the doctors only communicated to the police officers and did not communicate with Mr. Geller.

39.

Police officers transported Mr. Geller from the hospital to the East Baton Rouge Parish Prison, where he was incarcerated.

40.

Mr. Geller was never advised of his *Miranda* rights. He was not informed of the charges against him until he was released.

41.

Defendants' failure to advise Mr. Geller of his Miranda rights is confirmed by the Baton Rouge Police Department's Arrest Record for Mr. Geller on which the boxes for "Miranda Warning Given – Orally – Waiver #_____" are not completed. Exhibit 2.

42.

The Baton Rouge Police Department's Arrest Record does not mention Mr. Geller's injuries, his transportation to and from Lady of the Lake Hospital, or his treatment at the Emergency Room. The Arrest Report Narrative erroneously states,

> "On July 10, 2016 at 500 East Blvd, the reporting officer was assigned to the prisoner processing area for the protest events in Baton Rouge, LA. The Mobile Field Force officers brought the listed arrestee to the processing table and turned the individual over to the processing team. Officer completed the necessary paperwork and the arrestee was booked into EBR Parish prison for the listed charge(s)." Exhibit 2.

43.

The Affidavit of Probable Cause regarding Max Geller's arrest (Exhibit 3) is identical to the Affidavits of Probable Cause for many other protestors (Exhibit 4, in globo), except that "9000 Airline Highway" was crossed out and "500 East Blvd" was written in by hand. The Affidavit of Probable Cause also states that Mr. Geller was verbally advised of his Miranda rights, which is contrary to his Arrest Record.

44.

Defendants' use of a preprinted Affidavit of Probable Cause (Exhibit 3), that lacks any details of Mr. Geller's activities, location and arrest is evidence of Defendants' intent and conspiracy to deprive Mr. Geller of his civil rights, by knowingly signing and submitting a false Affidavit of Probable Cause to the 19th Judicial District Court.

45.

Mr. Geller was strip searched and moved into a cell in the General Population area of the East Baton Rouge Parish Prison, despite his obvious injuries.

46.

At three different times, Mr. Geller asked to see a doctor because the overhead light in the cell was making him more nauseous, which requests were denied. Mr. Geller did not see a nurse until about Noon on July 11, 2016.

47.

Mr. Geller was released from the East Baton Rouge Parish Prison on July 11, 2016 at approximately 4:00 p.m., after a friend posted bond.

48.

Mr. Geller has suffered and continues to suffer nightmares, recurring anxiety and severe emotional distress as a result of being arrested, assaulted and battered by defendants.

49.

Mr. Geller has obtained medical treatment, physical therapy and counselling for his head injuries, rib injuries and other injuries. He continues to be under the care of physicians and a psychologist.

50.

Defendants' conduct has resulted in scar tissue forming around Mr. Geller's elbow tendons, which has been diagnosed as "lateral epicondylitis," which may require future medical treatment.

51.

Mr. Geller has lost work time and has lost income due to defendants' conduct and the resulting physical injuries and emotional trauma.

52.

Mr. Geller's reputation and potential future income have been harmed by his false arrest and being charged with resisting arrest and obstructing a highway, which are on his criminal record.

## CAUSES OF ACTION

### COUNT 1:

### Deprivation of Civil Rights Under Color of Law

53.

Defendants, individually and through their employees, agents and others under their direction and control, acting under color of law, deprived Mr. Geller of his Constitutionally-protected rights, in violation of 42 U.S.C. section 1983.

54.

Defendants, individually, collectively and through their employees, officers and agents, promulgated, adopted and implemented policies, practices and procedures, which have resulted in the deprivation of the civil rights of Max Geller under color of law and in violation of federal and state law.

55.

Defendants, individually, collectively and through their employees, officers and agents, acted intentionally and with deliberate indifference to the violation of the civil rights of Max Geller.

56.

Defendants' actions and omissions were objectively unreasonable, such that defendants are not entitled to qualified immunity or statutory immunity.

57.

Defendants, individually, collectively and through their employees, officers and agents arrested and charged Max Geller pursuant to ordinances and statutes that are unconstitutionally vague, are unconstitutional as applied and prohibit conduct that is protected by the United States Constitution, including, but not limited to, La. R.S. 14:97.

58.

Defendants, knew or should have known that their actions and omissions would result in the deprivation of the civil rights of Mr. Geller.

59.

Defendants deprived Mr. Geller of his civil rights and selectively interpreted and enforced the laws, based upon the facts that Mr. Geller was protesting Defendants' conduct and were seeking changes to Defendants' policies, practices and procedures.

60.

Defendants acted pursuant to policies, practices or customs to abuse their law enforcement authority to disturb and disrupt targeted civil political assemblies and mass protests.

61.

Defendants' policy makers approved and authorized Defendants' tactics, policies, practices and customs, as evidenced by their public statements during and after the July 6 through 11, 2016 mass arrests.

62.

Defendants knew or should have known that their conduct was in violation of plaintiff's constitutional rights and acted with deliberate indifference, conscious disregard, gross disregard or reckless disregard for Mr. Geller's rights.

63.

Defendants individually, or through their officers, employees, agents and others under their direction and control, knowingly signed and submitted a false Affidavit of Probable Cause regarding Mr. Geller's arrest to the 19th Judicial District Court.

64.

The individually named Defendants, the supervisors that reported to them and all officers in the chain of command had the duty to intervene or prevent unlawful or unconstitutional conduct, negligence, and harm to the citizens they are sworn to serve and protect. Despite that duty, Defendants, individually and through their employees, agents and others under their direction and control, failed to intervene to protect the civil rights of Mr. Geller.

## COUNT 2:

### Conspiracy to Deprive Plaintiff of Civil Rights

65.

Defendants, individually and through their employees, agents and others under their direction and control, acting under color of law, conspired to deprive Mr. Geller of Constitutionally-protected rights, in violation of 42 U.S.C. section 1985.

## COUNT 3:

### Arrest Without Probable Cause

66.

Defendants, individually and through their employees, agents and others under their direction and control, arrested Mr. Geller without probable cause.

67.

There was no probable cause to arrest Mr. Geller for obstruction of a highway of commerce, because the streets had been closed by the police officers before this arrest. He could not have rendered movement on a road more difficult, at the time of his arrest, which is a required element for violation of La. R.S. 14:97.

68.

There was no probable cause to arrest Mr. Geller for resisting arrest. Mr. Geller did not flee and did not resist when LSP Officers John Doe One, Two and Three charged, brutally tackled and dragged him, as illustrated by Exhibit 1.

69.

The Affidavit of Probable Cause submitted to the 19th Judicial District Court regarding Mr. Geller's arrest was a preprinted form affidavit that did not correctly describe Mr. Geller's conduct, his location, the actions of the law enforcement officers that arrested him, or his transportation of Lady of the Lake Hospital before he was incarcerated at the East Baton Rouge Parish Prison. The Affidavit of Probable Cause also does not indicate that Mr. Geller was assaulted and taken into custody by LSP Officer John Doe One, LSP Officer John Doe Two, and LSB Officer John Doe Three.

**COUNT 4:**

**Violation of First Amendment Rights**

70.

Defendants, individually and through their employees, agents and others under their direction and control, violated Mr. Geller's First Amendment Rights of speech, assembly and free association.

## COUNT 5:

### Retaliation Against Exercise of Freedom of Speech and Assembly

71.

Defendants, individually and through their employees, agents and others under their direction and control, retaliated against Max Geller, who was exercising his rights of freedom of speech and assembly to state his grievances and obtain changes to Defendants' policies and practices regarding the use of excessive force, shootings, arrests and Defendants' violations of citizens' rights.

## COUNT 6:

### Denial of Medical Care

**72.**

Defendants, individually and through their employees, agents and others under their direction and control, denied and delayed necessary medical care to Max Geller, while he was in custody. The Defendants caused the head wounds, concussion and other injuries, for which he required medical care, when Defendants brutally tackled Mr. Geller, forced him to the ground, kicked him, hand-cuffed him and dragged him.

## COUNT 7:

### Louisiana Law False Imprisonment

73.

Defendants, individually and through their employees, agents and others under their direction and control, falsely imprisoned Max Geller.

## COUNT 8:

### Louisiana Law Malicious Prosecution

74.

Defendants, individually and through their employees, agents and others under their direction and control, maliciously prosecuted Max Geller, without probable cause.

## COUNT 9:

### Louisiana Law Assault and Battery

75.

Defendants, individually and through their employees, agents and others under their direction and control, including but not limited to LSP Officer John Doe One, LSP Officer John Doe Two, and LSB Officer John Doe Three, committed acts of assault and battery upon Max Geller.

## COUNT 10:

### Louisiana Law Intentional Infliction of Emotional Distress

76.

Defendants, individually and through their employees, agents and others under their direction and control, intentionally inflicted severe emotional distress upon Mr. Geller, during his arrest, transportation and imprisonment.

## COUNT 11:

### Louisiana Law Negligent Infliction of Emotional Distress

77.

In the alternative, Defendants, individually and through their employees, agents and others under their direction and control, negligently inflicted severe emotional distress upon Max Geller during his arrest, transportation, and imprisonment.

## COUNT 12:

### Louisiana Law Negligence

78.

Defendants, individually and through their employees, agents and others under their direction and control, were negligent in their conduct during Max Geller's arrest, transportation and imprisonment, and are liable to plaintiff for damages pursuant to Louisiana Civil Code article 2315.

## COUNT 13:

### Vicarious Liability

79.

Defendants are liable to Mr. Geller for the negligent acts and omissions of their employees, agents and others under their direction and control pursuant to Louisiana Civil Code article 2320 and the doctrine of *respondeat superior*.

80.

The individually named Defendants and the supervisors that reported to them, breached their duties to supervise, intervene and prevent the deprivation of Mr. Geller's constitutional rights.

## COUNT 14:

### Failure to Train and Supervise

81.

Defendants are liable to plaintiff for their negligent failure to train and supervise their employees, officers, agents and others under their direction and control.

**EQUITABLE AND DECLARTORY RELIEF**

82.

Max Geller is entitled to and prays for equitable and declaratory relief, including but not limited to:

A. Entry of an Order expunging or nullifying his arrest;

B. Entry of an Order prohibiting Defendants from reporting Mr. Geller's arrest to other law enforcement agencies or law enforcement databases;

C. Entry of an Order requiring Defendants to notify other law enforcement agencies and law enforcement databases that Mr. Geller's arrest was expunged or nullified;

D. Entry of an order prohibiting Defendants from reporting Mr. Geller's arrest to current or prospective employers or credit reporting agencies;

E. Entry of an Order directing Defendants to return all bonds or bail paid to Defendants by Mr. Geller or by paid by others on his behalf; and

F. Such other declaratory or equitable relief as may be just in the circumstances.

**DAMAGES**

83.

As a direct and proximate result of the joint acts or omissions of Defendants and their officers, employees, and agents identified in this Complaint, Max Geller has suffered monetary and non-monetary harm including deprivation of Constitutional rights, personal injuries and loss of liberty.

84.

As a result of Defendants' conduct, Max Geller has suffered and is entitled to compensation for:

1. Pain and suffering, past, present and future

2. Emotional distress, past, present and future

3. Medical expenses, past, present and future

4. Lost wages, past, present and future;

5. Harm to his reputation;

6. Deprivation of his civil rights; and

7. Such other damages as may be proven at trial.

85.

Plaintiff is entitled to an award of reasonable attorneys' fees and court costs, pursuant to 42 U.S.C. section 1988.

WHEREFORE, Plaintiff, Max Geller, prays judgment against Defendants and for an award of compensatory damages, costs and attorneys' fees, in amounts to be proven at trial, and declaratory and injunctive relief.

Respectfully submitted,

 __/s/ John K. Etter_____
Roy J. Rodney, Jr. (La. Bar No. 2079)
John K. Etter (La. Bar No. 25042)
Rodney & Etter, LLC
365 Canal Street, Suite 2690
New Orleans, LA 70130
Telephone: 504-483-3224
Facsimile: 504-483-2259
E-Mail: rjr@rodneylaw.com
E-Mail: jke@rodneylaw.com