UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MAX GELLER

VERSUS

CITY OF BATON ROUGE, ET AL.

CIVIL ACTION NO.

17-324-JWD-EWD

## RULING AND ORDER ON MOTION TO COMPEL

Before the court is a Motion to Compel Discovery Responses from Sheriff Sid. J. Gautreaux III and Motion for Award of Attorneys' Fees (the "Motion to Compel")[1] filed by plaintiff, Max Geller ("Plaintiff"). Defendant, Sid. J. Gautreaux, III, Sheriff of East Baton Rouge Parish ("Sheriff Gautreaux"), has filed an Opposition.[2]

For the reasons set forth herein, the Motion to Compel[3] is granted in part and denied in part. Specifically, Sheriff Gautreaux shall respond to Interrogatories 15 and 17, as well as revised Interrogatory 10 and revised Requests for Production 19 and 20 within ten (10) days of this Ruling and Order. Plaintiff's request for attorneys' fees is denied.

**I.  Background**

This suit arises out of the July 5, 2016 shooting of Alton Sterling and the subsequent protests that occurred in Baton Rouge, Louisiana on July 8-10, 2016. Plaintiff alleges that while participating in a peaceful protest on July 10, 2016 near the intersection of East Boulevard and France Street, he was "brutally attacked and beaten,"[4] "arrested on charges of simple obstruction

---

[1] R. Doc. 137.

[2] R. Doc. 138.

[3] R. Doc. 137.

[4] R. Doc. 60, Third Amended, Supplemental and Superseding Complaint for Damages for Deprivation of Civil Rights, ¶¶ 13-15. *See also*, R. Doc. 60, ¶ 51 ("The officers threw Max Geller to the ground, slammed his head into the ground, held him down and kicked Mr. Geller.")

of a highway of commerce, per La. R.S. 14:97 and resisting an officer, per La. R.S. 14:108,"[5] and denied medical care. Plaintiff asserts claims pursuant to, *inter alia*, 42 U.S.C. §§ 1983[6] and 1985(3),[7] and 1986.[8]

The Court previously deferred ruling on Sheriff Gautreaux's defense of qualified immunity and allowed limited discovery regarding the identity of the officers involved in the alleged underlying constitutional violations.[9] During an August 7, 2019 status conference, Plaintiff sought to compel discovery targeted to Plaintiff's conspiracy claim.[10] The Court granted Plaintiff leave to propound written discovery "narrowly targeted to plaintiff's conspiracy claim; specifically, times, places, and other circumstances of agreements preceding the alleged violation of Mr.

---

[5] R. Doc. 60, ¶ 55.

[6] *See*, R. Doc. 60, ¶¶ 84-106 (asserting violations of the First, Fourth, Eighth, and Fourteenth Amendment pursuant to 42 U.S.C. § 1983).

[7] *See*, R. Doc. 60, ¶¶ 107-115 (asserting a claim against all defendants for conspiracy to deprive Plaintiff of his civil rights in violation of 42 U.S.C. § 1985(3)).

[8] *See*, R. Doc. 60, ¶¶ (asserting a claim against all defendants for neglecting to prevent deprivation of Plaintiff's civil rights).

[9] *See*, R. Doc. 114, pp. 23-24 (discussing Plaintiff's allegations that he was dragged near a swat vehicle and struck in the head by a rifle butt or another blunt object and explaining that "THUS, IT IS CONCEIVABLE THAT THE OTHER, QUOTE, "POLICE OFFICERS," CLOSED QUOTE, THAT WERE REFERRED TO EARLIER, AND SPECIFICALLY ONE THAT STRUCK A PLAINTIFF IN THE HEAD WITH A RIFLE BUTT OR OTHER BLUNT OBJECT, MIGHT BE AN EBRSO DEPUTY."); p. 22 ("THE COURT IS GOING TO ALLOW LIMITED WRITTEN DISCOVERY ON THE NARROW ISSUE OF WHETHER ANY EBRSO DEPUTY WAS INVOLVED IN THE PLAINTIFF'S ARREST OR IN THE AFTERMATH OF HIS ARREST."); *Geller*, 17-324, R. Doc. 111, p. 2 ("while Plaintiff has adequately pled a single policy decision that may have been the moving force of constitutional violations and that was made with deliberate indifference, limited discovery is needed to determine if Plaintiff can plead an underlying constitutional violation by an individual EBRSO deputy. Discovery will be limited to written discovery on the narrow issue of which individual EBRSO deputies (if any) were involved in the alleged constitutional violations.").

[10] While counsel for Plaintiff recognized that Plaintiff's conspiracy claim had been previously dismissed, counsel correctly pointed out that the Court has also stated Plaintiff could have an opportunity to amend. *See*, R. Doc. 114, p. 63:7-12 ("WHILE PLAINTIFF HAS ALLEGED EVIDENCE OF A CONSPIRACY AND A CONSIDERABLE AMOUNT OF PARALLEL CONDUCT, HE HAS FAILED TO ALLEGE THE TIME, PLACE AND CIRCUMSTANCES IN WHICH THE AGREEMENTS -- THE AGREEMENT TOOK PLACE AND WITHOUT MORE PLAINTIFF'S CONSPIRACY CLAIM FAILS."); p. 71:1-8 ("TO THE EXTENT THE COURT HAS DISMISSED ANY CLAIMS, THE COURT WILL ACT IN ACCORDANCE WITH WISE JUDICIAL PRACTICE AND GIVE PLAINTIFF AN OPPORTUNITY TO AMEND HIS COMPLAINT. I DO WANT TO REMIND BOTH SIDES OF THEIR RULE 11 OBLIGATIONS. THIS CASE IS VERY COMPLEX AND REQUIRES DETAILED ANALYSIS OF MOTIONS, SO I ASK BOTH SIDES TO HAVE A GOOD FAITH BASIS FOR DOING ANYTHING THAT THEY DO IN THE NEXT ROUND.").

Geller's constitutional rights and the identification of officers actually physically involved in the alleged underlying constitutional violations."[11]

II. **Law and Analysis**

**A. The Motion to Compel is Granted as to Interrogatories 15 and 17; Interrogatories 1, 7, and 10, Requests for Production 19, 20, and 21 Are Not Within the Scope of Allowable Discovery at this Stage; Sheriff Gautreaux Shall Also Respond to Revised Interrogatory 10 and Revised Requests for Production 19 and 20.**

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."[12] Here, the Court has limited discovery to narrow and specific issues.[13] Accordingly, while the scope of discovery is generally "construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other

---

[11] R. Doc. 133, p. 11. During the August 7, 2019 status conference, the Court explained that "the only area for further discovery regarding plaintiff's conspiracy claim is discovery into the existence and specifics of an agreement." R. Doc. 133, p. 8.

[12] Fed. R. Civ. P. 26(b)(1).

[13] As stated above, this Court previously deferred ruling on Sheriff Gautreaux's assertion of qualified immunity to allow limited discovery. *See*, *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014) ("[T]his court has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense….a district court must first find that the plaintiffs [sic] pleadings assert facts which, if true, would overcome the defense of qualified immunity….After the district court finds a plaintiff has so pleaded, if the court remains unable to rule on the immunity defense without further clarification of the facts, it may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim.") (internal citations and quotations omitted).

matters that could bear on, any issue related to the claim or defense of any party,'"[14] Plaintiff's instant Motion to Compel must be considered in light of this Court's previous grant of leave to propound written discovery "narrowly targeted to plaintiff's conspiracy claim; specifically, times, places, and other circumstances of agreements preceding the alleged violation of Mr. Geller's constitutional rights and the identification of officers actually physically involved in the alleged underlying constitutional violations."[15]

Plaintiff seeks to compel responses to five interrogatories and three requests for production. Sheriff Gautreaux has objected to each of these discovery requests "as beyond the scope of limited discovery ordered by this Court."[16] The disputed discovery requests are as follows:

> **Interrogatory No. 1:**
>
> Describe Sheriff Gautreaux and the East Baton Rouge Sheriff's Office's duties and responsibilities in coordinating or participating in other law enforcement agency response to the Baton Rouge Protests under the East Baton Rouge Parish's Emergency Operations Plan.
>
> **Interrogatory No. 7:**
>
> Describe how other law enforcement agencies or officers coordinated their response to the Baton Rouge Protests with Sheriff Gautreaux or the East Baton Rouge Sheriff's Office.
>
> **Interrogatory No. 10:**
>
> For the time period between noon on July 9, 2016 through 2 a.m. on July 10, 2016, identify and describe any communications (whether in person, on radio transmission, e-mail, text message or other form of communication) between Sheriff Gautreaux and any official, officer or supervisor of the Louisiana State Police, City of Baton

---

[14] *Tadlock v. Arctic Cat Sales, Inc.*, Civil Action No. 15-766, 2017 WL 1032516, at * 3 (M.D. La. March 17, 2017) (quoting *Fraiche v. Sonitrol of Baton Rouge*, Civil Action No. 08-392, 2010 WL 4809328, at *1 (M.D. La. Nov. 19, 2010)) (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991); Fed. R. Civ. P. 26(b)(1)).

[15] R. Doc. 133, p. 11. During the August 7, 2019 status conference, the Court explained that "the only area for further discovery regarding plaintiff's conspiracy claim is discovery into the existence and specifics of an agreement." R. Doc. 133, p. 8.

[16] *See*, R. Doc. 137, pp. 2-4; R. Doc. 137-3.

Rouge, the Parish of East Baton Rouge, or the Baton Rouge Police Department, including but not limited to then-Colonel Edmonson, then-Mayor/President Holden and then-BRPD Chief Dabadie, about or concerning threatened, potential or actual protests at the intersection of East and France or other Baton Rouge Protests.

**Interrogatory No. 15:**

Please identify any and all commands, orders, instructions, briefings or directions given by Sheriff Gautreaux or by the East Baton Rouge Sheriff's Office directing other law enforcement officers to charge Max Geller with violating La. R.S. 14:97 and La. R.S. 14:108 and identify any and all documents or communications related to the commands, orders, instructions, or directions.

**Interrogatory No. 17:**

Who gave the order to prepare any pre-printed Affidavits of Probable Cause and who carried out that order?

**Request for Production No. 19:**

Produce any and all documents or communications in which Sheriff Gautreaux or any other East Baton Rouge Sheriff Officer is involved in directing other law enforcement officers for the time period of Noon on July 10, 2019 until 12:00 Midnight, including without limitation directions related to the protests at the intersection of East and France.

**Request for Production No. 20:**

Any and all documents that reference, describe or record any meetings with or between Sheriff Gautreaux, the East Baton Rouge Sheriff's Office, the City of Baton Rouge, the Baton Rouge Police Department, the Mayor's Office or any agency or sub-division thereof, and other law enforcement officials or entities regarding planning for political protests or the law enforcement response to the Baton Rouge Protests in July 2016.

**Request for Production No. 21:**

Any and all correspondence between Louisiana State Trooper Jacob Brown and Sheriff Gautreaux or the East Baton Rouge Sheriff's Office.

Plaintiff contends that "[e]ach of the disputed interrogatories and requests for production is relevant to the 'times, places, and other circumstances of agreements preceding the alleged

5

violation of Mr. Geller's rights,' permitted by this Court."[17]  In opposition to the Motion to Compel, Sheriff Gautreaux argues that he has "responded to Plaintiff's interrogatories that were narrowly tailored to determine the existence of any agreement by Sheriff Gautreaux to violate the Baton Rouge Protestors including Mr. Geller's constitutional rights.  The interrogatories and request for production in dispute are not narrowly targeted to the existence and specifics of an agreement to violate the protestors' constitutional rights."[18]

The Court finds that Interrogatories 15 and 17 are fairly within the scope of discovery previously allowed.  Accordingly, the Motion to Compel is granted with respect to Interrogatories 15 and 17.[19]

Conversely, the Court finds that Interrogatories 1, 7, and 10, as well as Requests for Production 19, 20, and 21[20] are not narrowly tailored to the times, places, and other circumstances

---

[17] R. Doc. 137-1, p. 4.  Plaintiff alleges that defendants "took concrete steps to enter into an agreement in July 2016 to unlawfully assault, arrest, detain and imprison Baton Rouge Protestors, such as Max Geller, knowing Defendants lacked probable cause to do so" and that "Defendants' conspiracy to deprive Geller of his civil rights is evidenced by their use of a pre-filled out Affidavit of Probable Cause for Mr. Geller and many other protestors, charging Mr. Geller and many other protestors with violating La. R.S. 14:97, and the excessive and militaristic response to the Baton Rouge protests by law enforcement officers from the Baton Rouge Police Department, East Baton Rouge Parish Sheriff's Office and the Louisiana State Patrol."  R. Doc. 60, ¶¶ 110 & 114.  *See also*, R. Doc. 60, ¶ 115 ("Defendants conspired individually, collectively and through their employees, officers and agents to arrest and charge Max Geller pursuant to ordinances and statutes that are unconstitutionally vague, are unconstitutional as applied and prohibit conduct that is protected by the United States Constitution, including, but not limited to, La. R.S. 14:97.").

[18] R. Doc. 138, p. 3.

[19] Plaintiff argues that the "Court should permit further and broader discovery regarding the agreements with other law enforcement agencies, the meetings, orders and directions, which Sheriff Gautreaux has denied."  R. Doc. 137-1, p. 5.  Plaintiff contends such discovery should be allowed because Sheriff's Gautreaux's sworn assertions in a related proceeding are inconsistent with Sheriff's Gautreaux's discovery responses in this suit.  Per an affidavit, Sheriff Gautreaux averred that he "made a request of the [Louisiana Sheriff's Association] Emergency Task Force for assistance with anticipated crowd control needs associated with protests arising out of an earlier shooting death…" and that in response to the request "several Sheriffs offered personnel and/or equipment to assist with the preservation of peace and order within East Baton Rouge Parish under the direction of local agencies."  *See*, R. Doc. 137-4.  The Court does not find Sheriff Gautreaux's affidavit (attesting to general planning and crowd control) to be inconsistent with Sheriff Gautreaux's discovery responses in this suit asserting that he did not have any agreements with other law enforcement agencies regarding decisions to arrest protestors for violating La. R.S. 14:97, agreements to use pre-printed affidavits of probable cause, or agreements to use force to arrest the Baton Rouge Protestors.  *See*, R. Doc. 137-1, p. 5.

[20] Request for Production 21 requests "[a]ny and all correspondence between Louisiana State Trooper Jacob Brown and Sheriff Gautreaux or the East Baton Rouge Sheriff's Office."  Plaintiff has alleged that "Louisiana State Police Trooper Jacob R. Brown, who is a resident of the State of Louisiana, who is sued individually, used excessive and

of agreements preceding the alleged violation of Mr. Geller's constitutional rights and therefore denies Plaintiff's Motion to Compel with respect to these requests. Plaintiff alleges that he was arrested near the intersection of East Boulevard and France Street on July 10, 2016 around 6:00 p.m.[21] and that "Defendants' conspiracy to deprive Geller of his civil rights is evidenced by their use of a pre-filled out Affidavit of Probable Cause for Mr. Geller and many other protestors, charging Mr. Geller and many other protestors with violating La. R.S. 14:97, and the excessive and militaristic response to the Baton Rouge protests by law enforcement officers from the Baton Rouge Police Department, East Baton Rouge Parish Sheriff's Office and the Louisiana State Patrol."[22] These interrogatories, however, seek much broader information. In order to narrowly tailor Plaintiff's discovery requests, the Court will reform Interrogatory 10 as follows:

> For the time period between noon on July 9, 2016 through 2 a.m. on July 10, 2016, identify and describe any communications (whether in person, on radio transmission, e-mail, text message or other form of communication) between Sheriff Gautreaux and any official, officer or supervisor of the Louisiana State Police, City of Baton Rouge, the Parish of East Baton Rouge, or the Baton Rouge Police Department, including but not limited to then-Colonel Edmonson, then-Mayor/President Holden and then-BRPD Chief Dabadie, about or concerning the availability, preparation, or use of pre-printed Affidavits of Probable Cause in response or relation to threatened, potential or actual protests at the intersection of East and France.

In keeping with revised Interrogatory 10, the Court will also revise Request for Production 19 as follows:

> Produce any and all documents or communications in which Sheriff Gautreaux or any other East Baton Rouge Sheriff Officer is involved in directing other law enforcement officers for the time period of

---

unwarranted force in tackling, assaulting, restraining and battering Max Geller on July 10, 2016." R. Doc. 60, ¶ 34. Accordingly, it does not appear that discovery related to Jacob Brown is narrowly tailored to Plaintiff's conspiracy claim and, because Jacob Brown has been identified, is not narrowly tailored to "identification of officers actually physically involved in the alleged underlying constitutional violation."

[21] R. Doc. 60, ¶¶ 41 & 43.

[22] R. Doc. 60, ¶ 114.

> Noon on July 10, 2019 until 12:00 Midnight related to the protests at the intersection of East and France.

Finally, the Court will revise Request for Production 20 as follows:

> Any and all documents that reference, describe or record any meetings with or between Sheriff Gautreaux, the East Baton Rouge Sheriff's Office, the City of Baton Rouge, the Baton Rouge Police Department, the Mayor's Office or any agency or sub-division thereof, and other law enforcement officials or entities regarding availability, preparation, or use of pre-printed Affidavits of Probable Cause in response or relation to threatened, potential or actual protests at the intersection of East and France.

### B. Plaintiff's Request for Attorneys' Fees is Denied

In addition to seeking to compel Sheriff Gautreaux's responses to certain written discovery requests, Plaintiff also requests an award of fees and expenses based on "Sheriff Gautreaux's unwarranted objections and unsupported denials."[23] Because the Court has denied in part and granted in part the Motion to Compel, certain of Sheriff's Gautreaux's objections were substantially justified and the Court finds that an award of fees and expenses here would be unjust.[24] Accordingly, the Court denies Plaintiff's request for attorneys' fees.

### III. Conclusion

For the reasons set forth herein, **IT IS HEREBY ORDERED** that the Motion to Compel Discovery Responses from Sheriff Sid. J. Gautreaux, III and Motion for Award of Attorneys' Fees (the "Motion to Compel")[25] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS HEREBY ORDERED** that defendant, Sid. J. Gautreaux, III, Sheriff of East Baton Rouge Parish ("Sheriff Gautreaux"), shall respond to Interrogatories 15 and 17, as well as revised

---

[23] R. Doc. 137-1, p. 5.

[24] *See*, FRCP 37(a)(5)(A)(ii) & (iii).

[25] R. Doc. 137.

Interrogatory 10 and revised Requests for Production 19 and 20 within ten (10) days of this Ruling and Order.

**IT IS FURTHER ORDERED** that Plaintiff's request for attorneys' fees is **DENIED**.

Signed in Baton Rouge, Louisiana, on November 6, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**