UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| Max Geller | * | |
| Plaintiff | * | |
| | * | Civil Action No. 3:17-cv-0324 |
| Versus | * | |
| | * | |
| Melvin "Kip" Holden, | * | |
| Mayor of Baton Rouge | * | |
| City of Baton Rouge, | * | |
| East Baton Rouge Parish. | * | Judge deGravelles |
| Carl Dabadie, Jr., Chief of Police, Baton Rouge, | * | |
| Louisiana State Police Trooper Jacob R. Brown, | * | |
| et al | * | |
| Defendants | * | Magistrate Judge Wilder-Doomes |

**- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -**

### FIFTH AMENDED AND SUPPLEMENTAL COMPLAINT
### FOR DAMAGES FOR DEPRIVATION OF CIVIL RIGHTS

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Max Geller, and

files this Fifth Amended Complaint for Damages for Deprivation of Civil Rights, pursuant to this

Court's Status Conference Report and Order, Document, 133, which amends, supplements and

supersedes plaintiff's prior complaints.  Plaintiff hereby amends his complaint by deleting claims

against Sheriff Gautreaux, the East Baton Rouge Sheriff's office and EBRSO officers per this

Court's recent judgment. Plaintiff also adds more specific factual allegations and more details

regarding the constitutional and statutory violations by each of the remaining defendants.

Plaintiff, Max Geller, brings this action under 42 U.S.C. Sections 1983, 1985(3) and 1986,

for violation of his civil rights under the First Amendment, Fourth Amendment, Eighth

Amendment and Fourteenth Amendment of the United States Constitution and under Louisiana

law.  He seeks compensatory, nominal and punitive damages for defendants' unlawful arrest, and

use of excessive force by the named defendant officers of the Baton Rouge Police Department

("BRPD"), and officers of the Louisiana State Police ("LSP"). Plaintiff also seeks damages for the illegal and conspiratorial acts of the then Baton Rouge Mayor Kip Holden.  Plaintiff also seeks an award of attorney's fees, per 42 U.S.C. Section 1988.

## PRELIMINARY STATEMENT

"The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Mesa v. Prejean,* 543 F.3d 264, 273 (5th Cir. 2008).

On July 10, 2016, Max Geller was subjected to excessive force and false arrest by Louisiana State Trooper Jacob Brown, other unknown State Troopers and unknown Baton Rouge Police Department officers (according to the defendants' responses to limited discovery) who deployed, or assisted in the deployment, or failed to prevent, the use of a deadly knee hold restraint with and elbow to the chest, tackling and other deadly force physical restraint methods that are excessive, dangerous, discredited and contrary to Louisiana State Police and Baton Rouge Police Department policies regarding the use of excessive or deadly force, all in violation of Max Geller's clearly established constitutional and statutory rights and contrary to state law. *See* Photograph of Max Geller's arrest below and news article, Zoe Tillman, *Lawsuit Accuses Baton Rouge Police of Excessive Force During Protests Over Alton Sterling's Death*, BuzzFeed News Reporter, July 10, 2017.[1]  The Baton Rouge Police Department, the Louisiana State Police and other law enforcement agencies also conspired amongst themselves and with Mr. Melvin Kip Holden, the Mayor of the City of Baton Rouge to knowingly, willfully and intentionally deprive peaceful protestors of their constitutional rights or to act with deliberate indifference to Mr. Geller's rights under the First, Fourth and Fourteenth Amendments to the United States Constitution and the laws of Louisiana.

---

[1] Plaintiff hereby incorporates and adopts by reference all exhibits to this Fifth Amended Complaint and all exhibits to plaintiff's prior complaints and pleadings, pursuant to F.R.C.P. Rule 10(c).





1.

Each and every named law enforcement defendant including the named defendants and Baton Rouge Police Department Lieutenant Darron Leach and Baton Rouge Police Department Lieutenant Kenneth Wayne Martin, BRPD officers Steve Wilkison, Earl Laperyrouse, Randall Wiedeman, David Wallace, Abraham Wilson, Glen Hutto, Chris Johnson, Adam Cheney, Jimmy Nicholson, BRPD Incident Commander Keith Martin, and other law enforcement officers (hereinafter referred to as "**the Officer Defendants**") knew that the assaults upon Max Geller, a peaceful protestor, and his false arrest were violative of clearly established constitutional, statutory and tort law because the named law enforcement defendants were there – at the intersection of East Boulevard and France Street on July 10, 2016 - and knew these facts from their own individual visual observations, emails and radio communications. They used radio transmissions to notify

defendant BRPD Chief Carl Dabadie that the protest was peaceful. Chief Dabadie then notified Mayor Holden by phone and in person, such that every defendant had knowledge of the peaceful nature of the protest before ordering arrest.

Even more specifically, the defendants knew that East Boulevard was closed to traffic, since law enforcement officers themselves had blocked the streets to traffic by using actual barricades to block France Street, prohibiting the protestors from going onto Interstate 10 or moving into other neighborhoods. Defendants knew that there had been no attempt to reopen the streets prior to Mr. Geller's arrest and the closure of the streets by law enforcement made it impossible for Mr. Geller to obstruct traffic because there was no traffic to obstruct. The officer defendants encircled the protestors, including Mr. Geller and trapped the protestors onto the very highway they were charged with obstructing. This discredited technique is called "kettling". The officer defendants reported either directly, or through the chain-of-command to Chief Dabadie and Mayor Holden (hereinafter **"the Supervisor Defendants"**) that Max Geller and the other protestors were attempting to comply with law enforcement orders, by moving to the curb and moving onto private property.

2.

Prior to Mr. Geller's arrest the Supervisor Defendants and the Officer defendants had already conspired to falsely arrest and charge the trapped protestors, including Max Geller, with violating La. R.S. 14:97 – obstruction of a highway, days before the July 10, 2016 protest began because they ordered pre-prepared, factually incorrect affidavits of probable cause to charge peaceful protestors with violating La. R.S. 14:97.[2]

---

[2] Two days before Max Geller's arrest, the commanding officers of the Baton Rouge Police Department, including but not limited to named defendants BRPD officers Steve Wilkison, Earl Laperyrouse, Randall Wiedeman, David Wallace and BRPD Incident Commander Keith Martin, and other law enforcement

3.

The Officer Defendants and the Supervisor Defendants knew that dozens of peaceful protestors had been arrested, charged with violating La. R.S. 14:97  and were incarcerated between July 6 and July 9, 2016, because those facts were reported during the Mayor's Office of Homeland Security and Emergency Preparedness ("MOHSEP") daily 9:00 a.m. briefings and were widely reported by news media. Yet none of the defendants intervened although they had the time and the means to  prevent the continued violation of the protestors' civil rights, including Max Geller's, through false arrest and false imprisonment, violation of the  First Amendment rights to assemble and protest. Each defendant had been briefed and trained on the laws applicable to public protest

---

agencies, agreed to charge peaceful protestors with violation of Simple Obstruction of a Highway of Commerce under La. R.S. 14:97, as evidenced by e-mails and radio communications.

| | |
|---|---|
| **From:** | Steve Wilkison |
| **To:** | Earl Lapeyrouse; Randall Wiedeman |
| **Cc:** | David Wallace; Kenneth W. Martin |
| **Subject:** | Statute / Ordinance for Obstruction of Traffic |
| **Date:** | Friday, July 8, 2016 3:29:48 PM |

**City Ordinance**

Sec. 11:297. - Simple obstruction of a highway of commerce.

Simple obstruction of a highway of commerce is the intentional or criminally negligent  placing of anything or performance of any act on any railway, railroad, navigable  waterway, road, highway, thoroughfare, or runway of an airport, which will render  movement thereon more difficult.

Whoever commits the crime of simple obstruction of a highway of commerce shall be  fined not more than two hundred dollars ($200.00), or imprisoned for not more than  six (6) months, or both.

(Ord. No. 10599, § 2, 3-27-96)

**State Statute**

14:97.  Simple obstruction of a highway of commerce

A.  Simple obstruction of a highway of commerce is the intentional or criminally  negligent placing of anything or performance of any act on any railway, railroad, navigable  waterway, road, highway, thoroughfare, or runway of an airport, which will render movement  thereon more difficult.

B.  Whoever commits the crime of simple obstruction of a highway of commerce shall  be fined not more than two hundred dollars, or imprisoned for not more than six months, or both.

Acts 2014, No. 791, §7.

in the Louisiana State Police Academy and the Baton Rouge Police Academy. They also witnessed and knew from reports provided at the Mayor's July 10, 2016 meeting and from other briefings that some law enforcement officers had used excessive force upon protestors during the prior three days.

4.

LSP Trooper Jacob Brown, one other Louisiana State Police officer and a Baton Rouge police officer, the latter two not identified by the defendants in discovery[3] subjected Mr. Geller to a neck restraint tactic where defendant Brown placed his knee on Mr. Geller's neck to block his carotid artery and render him unconscious by restricting blood to his brain and restricting his breathing; while others rendered him immobile. This type of neck restraint has been restricted only to self-defense, if not banned completely by the Louisiana State Police and the Baton Rouge Police Department, such that Trooper Brown and his currently unknown accomplices were well aware that the use of such a hold was a use of excessive force. The abuse of Mr. Geller went on for several minutes and included his being subjected to the knee crush to his neck, his escape from that death trap, only to be once again subdued violently by tackle and then struck with a rifle butt while being dragged on and off the ground.

5.

Many persons have died as result of the deadly neck restraint tactic. It has been banned by many city police departments including Los Angeles, New York and other law enforcement. On July 17, 2014 Eric Garner died after being placed in a chokehold by New York Police. The knee-to-the-neck restraint is neither taught nor sanctioned by any known police agency. The hold is

---

[3] See Trooper Jacob Brown's Answers to plaintiff's First Set of Interrogatories and Requests for Production, dated October 11, 2019, Answer to Interrogatory No. 16 ("I assisted in the detention of Max Geller. I do not know the names of the other officers involved in the detention and arrest of Max Geller.")

dangerous because it blocks the neck artery and the flow of blood to the brain and causes traumatic brain injury. All police organizations have recognized the use of neck restraints as deadly force. Therefore, all of the individuals, including LSP Officer Jacob Brown and the unidentified officers knew that they were using deadly and excessive force in the restraint of the unarmed trapped Max Geller. Defendants knew that the use of knee-to-neck tactics and restraints violated agency policies such as Baton Rouge Police Dept. General Order 131 regarding the use of deadly force. A copy of General Order 131 is attached hereto as Exhibit "i".

6.

LSP Trooper Jacob Brown and the other unknown officers of the Baton Rouge Police Department and Louisiana State Police who restrained Mr. Geller knew that there was a lack of probable cause to arrest him because the "kettling" tactics had made it impossible for Mr. Geller to avoid arrest and that it was impossible to obstruct a street that had already been closed by barricades, also had a reasonable opportunity to realize the excessive nature of the force used because they, also knew Mr. Geller was unarmed, and did not pose a physical threat to three or four police officers, but nevertheless used excessive and deadly force upon him. Trooper Brown and the unidentified police officers as well as the officer defendants and supervisor defendants had a reasonable opportunity to realize the excessive nature of the force and to intervene to stop  it because the episode lasted several minutes and they heard Mr. Geller beg for his release from the potentially deadly hold.

7.

The sworn declarations submitted to this Court in the *North Baton Rouge Matters v. City of Baton Rouge*, U.S.D.C. M.D. La., No. 3:16-cv-463, lawsuit confirm that the Louisiana State Police, and the Baton Rouge City Police intimidated, threatened and injured peaceful protesters

over multiple days, including the violent arrest of Max Geller and other protestors on July 10, 2020.[4] The excessive, militarized law enforcement response of the Baton Rouge Police Department, Louisiana State Police officers and other law enforcement agencies to the protests that followed the July 5, 2016, death of Alton Sterling, and the mass arrests of protestors are well-known.[5]

8.

A pre-determined unconstitutional policy of falsely arresting protestors was applied to all Baton Rouge protestors, including Max Geller, as shown by 132 Affidavits of Probable Cause containing one of two versions of boiler plate language. *See* Affidavit of Probable Cause for arrest of Max Geller (Exhibit 3); Example Affidavits of Probable Cause, (Exhibit 4).[6] Hundreds of officers from the Baton Rouge Police Department, the Louisiana State Police, including defendant Jacob R. Brown, and other law enforcement agencies put on riot gear, lined up with shields and assault rifles, deployed armored vehicles and falsely arrested more than 100 people, pursuant to Baton Rouge Police Department and Louisiana State Police policies, decisions and commands.[7]

---

[4] *See e.g.* Declaration of Marquita D. Christy, Doc. 2-5, pp. 6 – 9 ("I could not decipher were all of the officers were from, but I did see Baton Rouge Police Department (BRPD) and deputies from the Baton Rouge Sheriff's office"); Declaration of Alissa Luis, Doc. 2-7, pp. 9 – 12 ("Many officers were wearing riot gear and had their names taped over, so I could not identify who they were. Officers from the Baton Rouge Police Department, East Baton Rouge Parish Sheriff's Office and the Louisiana State Police were on the scene"); Declaration of Alison McCray, Doc. 2-7, pp. 14 – 20 ("During this weekend of protests, I observed Louisiana State Police troopers, East Baton Rouge Police Sheriffs, and Baton Rouge Police Officers."). *See also* Promise of Justice Initiative, **Punished Protestors in Baton Rouge**, July, 2017.

[5] Fed. Rule Evid. 201 (b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and reasonably determined from sources whose accuracy cannot be reasonably questioned.")

[6] See also Maya Lau, *Identical arrest reports for many Alton Sterling a red flag, legal experts say*, The Advocate, September 18, 2016.

[7] *See* Mya Lau, *Helping or hurting? Police deploy military style gear at Alton Sterling protests in Baton Rouge*, The Advocate, July 11, 2016 (noting that BRPD has armored vehicles and that LSP issued Bushmaster XM-15 rifles to each of its troopers).

## PARTIES

9.

Plaintiff, Max Geller, is an adult former resident of New Orleans, who was brutally tackled and beaten by Louisiana State Trooper Jacob R. Brown, presently unidentified Louisiana State Police Officer John Doe Two, presently unidentified Baton Rouge Police Officer "Roe" and other law enforcement officers, on July 10, 2016, while peaceably protesting. Plaintiff requests damages pursuant to 42 U.S.C. sections 1983 and 1985, for violations of his rights under the 1st, 4th, 8th and 14th Amendments to the United States Constitution and Louisiana law.

### City of Baton Rouge, East Baton Rouge Parish
### And Baton Rouge Police Department Defendants

10.

Made Defendants herein are the City of Baton Rouge a municipality of the State of Louisiana, domiciled in East Baton Rouge Parish, established pursuant to its Home Rule Charter and statutes, which has the capacity to sue and be sued, and East Baton Rouge Parish.  The City of Baton Rouge and East Baton Rouge Parish operate as a single governmental entity.[8]

11.

Made Defendant herein is Melvin "Kip" Holden an adult resident of Louisiana, who at all relevant times was the duly-elected Mayor – President of the City of Baton Rouge and East Baton Rouge Parish, and was the Chief Executive Officer of the City and Parish.  Mayor Holden is sued in his official capacity. Mayor Holden knew that protestors had been unconstitutionally arrested for obstructing a highway and that protestors had been subjected to violence and excessive force during the four days prior to Max Geller's arrest, had the opportunity to intervene to prevent the

---

[8] The City of Baton Rouge and East Baton Rouge Parish are collectively referred to herein as the "City / Parish of Baton Rouge" or "Baton Rouge."

10

violations of Mr. Geller's constitutional rights by ordering BRPD to stop using excessive force, stop falsely arresting protestors and to release those falsely arrested from jail. Mayor Holden failed to intervene. Defendant Holden has been succeeded as Mayor – President by Sharon Weston Broome. As Mayor, Mr. Holden had final policymaking authority with respect to city policy generally, including with respect to the Baton Rouge Police Department.[9] He is responsible for appointing and supervising the Baton Rouge Police Chief. Mayor Holden was in communication with other public officials during the July 2016 protests, though he did not make public appearances.[10]

12.

Made Defendant herein is Baton Rouge Police Department Lieutenant Darron Leach who was one of the Incident Commanders at the time of the protest at issue in this lawsuit. Defendant Leach is an adult resident of Louisiana. Defendant Leach was at the scene of the assaults upon Max Geller and his arrest and was in the position to see and did see the deadly knee hold and violent assaults upon Mr. Geller. Lieutenant Leach knew that the unprovoked assaults upon Mr. Geller and arrest for obstructing a street violated clearly established law. He was in command, had the authority and the opportunity to intervene to prevent the violations of Mr. Geller's rights by use of discredited tactics of entrapment and kettling described above. Baton Rouge Police Department Lieutenant Darron Leach acquiesced in the use of excessive force, false arrest and false imprisonment of Mr. Geller and also acted with deliberate indifference to his rights.

---

[9] See Cain Burdeau, **Absent during protests, Baton Rouge Mayor is more visible** (Associated Press, July 20, 2016) ("Holden said he could not go against his officers. 'Think about it. I'm the boss of that officer,' he said referring to the officer who shot Sterling.")

[10] See Andrea Gallo, **Mayor Kip Holden: "It has been hell" after Alton Sterling shooting in Baton Rouge** (The Advocate, July 12, 2016) ("he said he considers himself 'very active' and that he's been on the phone with other public officials and meeting with other groups – like the World Changers student missionaries – in the past few days.").

13.

Made Defendant herein is Baton Rouge Police Department Lieutenant Kenneth Wayne Martin who was one of the Incident Commanders at the time of the protest at issue in this lawsuit. Defendant Martin is an adult resident of Louisiana.  Defendant Martin was at the scene of the assaults upon Max Geller and his arrest and was in the position to see and did see the  tackling, deadly knee hold and violent assaults upon Mr. Geller. Lieutenant Martin knew that the unprovoked assaults upon Mr. Geller and arrest for obstructing a street violated clearly established law. He was in command, had the authority and the opportunity to intervene to prevent the violations of Mr. Geller's rights by use of discredited tactics of entrapment and kettling described above.  Baton Rouge Police Department Lieutenant Kenneth Wayne Martin acquiesced in the use of excessive force, false arrest and false imprisonment of Mr. Geller and also acted with deliberate indifference  to his rights.

14.

Made Defendants are BRPD officers Ken Camallo, James Cutrer, Keith Wilson, Jason Dohm and Seth Sinclair, each of whom is an adult resident of Louisiana and an employee of the Baton Rouge Police Department.  On information and belief, police officers of the Baton Rouge Police Department, including but not limited to BRPD officers Ken Camallo, James Cutrer, Keith Wilson, Jason Dohm and Seth Sinclair and other presently unidentified BRPD officers were at the intersection of East Boulevard and France Street when Max Geller was assaulted, arrested, detained and incarcerated.  Police officers of the Baton Rouge Police Department, including but not limited to BRPD officers Ken Cammallo, James Cutrer, Keith Wilson, Jason Dohm and Seth Sinclair witnessed Max Geller's arrest and acted in concert with other named defendants to deprive Mr. Geller of his civil rights. The identity of the presently unknown BRPD officers who were at

the intersection of East and France at the time of Mr. Geller's arrest can be determined via discovery.

15.

Made defendant is Carl Dabadie, Jr.  Dabadie. Defendant, Carl Dabadie, Jr. is the former Chief of Police of the City / Parish of Baton Rouge, who is sued in his official capacity.  Carl Dabadie, Jr. was the Baton Rouge Chief of Police during the Baton Rouge Protests, when Max Geller was assaulted, arrested and jailed. Police Chief Dabadie was the highest-ranking officer of the Baton Rouge Police Department.  As Police Chief, he was a policy maker for the Police Department and is responsible for directing, training and supervising all Police Department staff and officers.  He set policies for the BRPD, directed the deployment of officers during the Baton Rouge protests and was an eyewitness to the continuing arrests and charging of protestors with violations of La. R.S. 14:97 and resisting arrest.  Police Chief Dabadie  in his official capacity, is vicariously liable under Louisiana law for the torts and civil rights violations committed by his officers in the course and scope of their employment. Chief Dabadie communicated updates of law enforcement action at the protests to Mayor Holden.  Chief Dabadie knew that protestors had been unconstitutionally arrested for obstructing a highway and that protestors had been subjected to violence and excessive force during the four days prior to Max Geller's arrest, affirmatively participated in furtherance of the scheme and had the opportunity to intervene to prevent the violations of Mr. Geller's constitutional rights by ordering BRPD to stop using excessive force and stop falsely arresting protestors.  Chief Dabadie failed to intervene. Instead he instituted a policy of false arrests and authorized his commanders and officers to use illegal tactics and excessive force to effectuate those arrests.

16.

Mayor Holden and Chief Dabadie knew that Baton Rouge Police officers and Louisiana State Police officers would respond to the protestors with violence because it had been their plan to violently suppress protest and their inaction constituted a City / Parish of Baton Rouge policy to engage in excessive force, utilize illegal tactics and chokeholds and expressed such sentiments in the Mayor's task force meetings.

17.

Jonathan Dunnam was Interim Baton Rouge Chief of Police.  Murphy J. Paul is currently Baton Rouge Chief of Police.  All allegations against Police Chief Dabadie in his official capacity are also alleged against Interim Police Chief Jonathan Dunnam in his official capacity and are alleged against Police Chief Murphy J. Paul, Jr. in his official capacity, as successors to Chief Dabadie's position, responsibilities and liabilities in Chief Dabadie's official capacity. Defendant Chief Dabadie had the opportunity to intervene to prevent the violations of Mr. Geller's constitutional rights and failed to intervene.

18.

BRPD officers Ken Camallo, James Cutrer, Keith Wilson, Jason Dohm and Seth Sinclair were personally involved in restraining Max Geller as he was being moved from East Boulevard and France Street to the processing area, as shown in the video entitled "**DeSalvo 7-10-16 East Blvd protest videos (3).MOV**", which was produced by the City of Baton Rouge, Manual Attachment.  The assault upon Mr. Geller is at 1:00 through 1:40.[11]  They witnessed that Max Geller was not obstructing a street, witnessed the excessive force used upon Mr. Geller by Trooper

---

[11] The video "**DeSalvo 7-10-16 East Blvd protest videos (3).MOV**" was provided to the Court and all counsel as a Manual Deposit on an USB drive.

Jacob Brown and others, and knew that Max Geller would be falsely charged with violating La. R.S. 14:97 using a pre-prepared false Affidavit of Probable Cause.  Officers Ken Camallo, James Cutrer, Keith Wilson, Jason Dohm and Seth Sinclair had the opportunity to prevent the false arrest of Mr Geller, but did not intervene to prevent the false arrest of Mr. Geller.

19.

Made Defendants herein are BRPD Officers Steve Wilkison, Earl Laperyrouse, Randall Wiedeman, David Wallace, Glen Hutto, Chris Johnson, Adam Cheney and Jimmy Nicholson who were involved in preparing and circulated the false pre-printed Affidavit of Probable Cause to other law enforcement officers, which was used for Max Geller's arrest.  Officers Wilkison, Laperyrouse, Wiedeman, Hutto, Johnson, Cheney and Nicholson and other law enforcement officers and agencies acted and conspired to prepare and use identical, boiler-plate arrest reports and affidavits of probable cause for more than 100 protestors, including Mr. Geller.  The pre-printed Affidavits of Probable Cause were prepared prior to any of the alleged violations by Mr. Geller or other protestors.  Officers Wilkison, Laperyrouse, Wiedeman, Wallace, Hutto, Johnson, Cheney and Nicholson are all adult residents of Louisiana.  Each of  Officers Wilkison, Laperyrouse, Wiedeman, Hutto, Johnson, Cheney and Nicholson knew that arresting peaceful protestors for simple obstruction of a street or highway was unconstitutional and knew that an affidavit of probable cause must contain the actual facts of the particular arrestee's alleged violative conduct.  They also knew that peaceful protestors had been charged with obstructing a street during the days prior to Max Geller's arrest. Each of BRPD Officers Wilkison, Laperyrouse, Wiedeman, Hutto, Johnson, Cheney and Nicholson had the opportunity to intervene to prevent the violations of Mr. Geller's constitutional rights by objecting to the pre-prepared affidavits for obstruction of a highway.  None of them intervened.  In fact, named defendants, BRPD Officers

15

Wilkison, Laperyrouse, Wiedeman, Hutto, Johnson, Cheney and Nicholson prepared and circulated revised versions of the affidavits of probable cause on the morning of July 10, 2016 and acquiesced in those affidavits being used to falsely arrest Max Geller and others.[12]

20.

Made Defendant herein is Baton Rouge Police Department Officer Abraham Wilson, III who processed the paperwork for Mr. Geller's arrest.  Defendant Wilson  wrote upon and signed the illegal Affidavit of Probable Cause regarding Mr. Geller, in furtherance of the scheme and conspiracy to violate Mr. Geller's rights. Defendant, Baton Rouge Police Officer Abraham Wilson is an adult resident of Louisiana.  Defendant Wilson knew that the affidavit for Max Geller was a pre-prepared form affidavit, which did not state the actual facts of Mr. Geller's alleged misconduct, as Officer Wilson had processed other preprinted affidavits of probable cause.  Officer Wilson knew that arresting a peaceful protestor on a charge of obstructing a street was unconstitutional. Officer Wilson also knew that he had not personally witnessed Max Geller's alleged misconduct, since Officer Wilson was at the prisoner processing site more than a block away from East and France.   Officer Wilson had the opportunity to intervene to prevent the violations of Mr. Geller's

---

[12] **From:**               Chris Johnson
**To:**                    Jimmy Nicholson
**Subject:**              Fwd: PC Affidavits for 7-10-16
**Date:**                 Sunday, July 10, 2016 6:29:47 PM
**Attachments:**      PC 7-10-16 Simple Obstruct.doc
                         PC 7-10-16 Simple Obstruct - Resisting.doc
Sent via the Samsung GALAXY S® 5, an AT&T 4G LTE smartphone

-------- Original message --------
From: Glenn Hutto <GHutto@brgov.com> Date:
7/10/2016 10:40 AM (GMT-06:00)
To: Glenn Hutto <GHutto@brgov.com>, Chris Johnson <CJJohnson@brgov.com>, Adam Cheney
<ALCheney@brgov.com>
Subject: PC Affidavits for 7-10-16

constitutional rights by objecting to the preprinted affidavit. Officer Wilson personally participated and acquiesced in the false arrest and imprisonment of Mr. Geller by completing and signing the prepared affidavit.

21.

On information and belief, officers and commanders of the Baton Rouge Police Department and the Louisiana State Police, including the Supervising Defendants, attended briefings of the East Baton Rouge Parish, Mayor's Office of Homeland Security and Emergency Preparedness ("MOHSEP"), during which Defendants planned and conspired to deprive Max Geller and other protestors of their constitutional rights. The MOHSEP meetings began at 9:00 a.m. each day from July 7 through 15, 2016. During the MOHSEP meetings, BRPD officers and LSP officers discussed the previous day's protests, deployment of law enforcement resources, equipment, expected protests, tactics, strategy, intelligence, arrests, transporting arrestees, affidavits of probable cause and communications with other law enforcement agencies and public officials. Upon information and belief, the coordinated, militarized, multi-agency law enforcement response to the protests, violations of La. R.S. 14:97 to be charged and the use of force were discussed and agreed upon by BRPD, LSP and other law enforcement agencies during the MOHSEP briefings. On information and belief, the matters discussed and decisions made during the MOHSEP briefings were communicated to all of the BRPD and Louisiana State Police commanders and officers who were assigned to respond to the Baton Rouge Protests.

**Louisiana State Police Defendants**

22.

Two Louisiana State Police officers and a Baton Rouge Police Officer, two of whose identities are presently unknown, tackled and assaulted Max Geller as shown in Exhibit 1. Plaintiff

reserves the right to amend this Complaint, when the presently unidentified Louisiana State Police Officer John Doe Two and the presently unidentified Baton Rouge Police Officer "Roe" are identified.

23.

Made Defendant herein is Louisiana State Police Trooper Jacob R. Brown, who is an adult resident of the State of Louisiana, who is sued individually, personally used excessive and unwarranted force in tackling, assaulting, restraining and battering Max Geller on July 10, 2016. Trooper Brown knew that tackling, using a knee hold and violently restraining a peaceful protestor, such as Max Geller was contrary to clearly established law.  Trooper Brown personally participated in and acquiesced in the deprivation of Mr. Geller's constitutional and statutory rights.

24.

Made Defendant herein is Louisiana State Police Lieutenant Beau Comeaux who is an adult resident of Louisiana.  Lt. Comeaux was the head of LSP's Mobile Field Force, and was in command of LSP forces at the time of Plaintiff's arrest, including being in command of LSP Trooper Jacob Brown and the other presently unknown LSP officer who assaulted Mr. Geller. Defendant Comeaux was at the intersection of France and East at the time Max Geller was assaulted and arrested.  Lt. Comeaux witnessed the assault upon Mr. Geller.  On information and belief, Lt. Comeaux knew that excessive force was likely to occur, since protestors had been violently arrested in the days prior to Mr. Geller's arrest and during the July 10, 2016 protects.  Lt. Comeaux knew that three officers tackling, beating and using a knee hold upon Max Geller was contrary to clearly established constitutional rights.  Lt. Comeaux also knew that charging peaceful protestors with obstructing a street was unconstitutional. Lt. Comeaux was in command and had an opportunity to intervene and stop the violation of Mr. Geller's rights. Lt. Comeaux did not order

Trooper Brown and the other officers to use minimal force or to not assault Mr. Geller. Lt.
Comeaux failed to intervene and acquiesced in the use of excessive force and false arrest of Mr.
Geller.

## JURISDICTION AND VENUE

25.

This Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1331, 28 U.S.C.
section 1343 and 28 U.S.C. section 1367 (supplemental jurisdiction), as plaintiff seeks redress and
protection of his Constitutional rights under 42 U.S.C. sections 1983, 1985 and 1988, and under
Louisiana tort law.

26.

Venue is appropriate in this judicial district, pursuant to 28 U.S.C. section 1391, because
the defendants reside in this district and the events or omission giving rise to Mr. Geller's claims
occurred in this district.

## STATEMENT OF FACTS

27.

On Tuesday, July 5, 2016, Mr. Alton Sterling was shot and killed by Baton Rouge Police
Department officers, leading to Max Geller protesting the Baton Rouge Police Department's
conduct and seeking justice and demanding an independent investigation of Mr. Sterling's death
and changes to the Baton Rouge Police Department's policies, procedures and practices.

28.

In response to the large and growing protests and the national spotlight on protesters'
nonviolent, lawful resistance, the City / Parish of Baton Rouge, the Baton Rouge Police
Department, the individually named defendants and other public officials, officers and agencies to

be determined during discovery, led by Defendants Mayor Holden, Chief Dabadie and Lt. Commeaux developed and implemented a strategy. Their strategy was to silence this peaceful and lawful exercise of First Amendment rights through intimidation, excessive force, and illegal arrests and detention. Other law enforcement agencies not currently known to Plaintiffs joined Defendants in this endeavor.

29.

On July 5, 2016, the  Baton Rouge City Police Department contacted the Louisiana State Police, Baton Rouge's intelligence, K9 and Street Crimes units and other law enforcement agencies to respond to protests at the Triple S Store, where Alton Sterling had been killed by police on July 5, 2016.

30.

The Baton Rouge City Police Department activated the Incident Command System on July 6, 2016, through which the Louisiana State Police and a multitude of other law enforcement agencies formed a Task Force, including the Louisiana State Police's Mobile Field Force, the multi-agency SWAT unit, Louisiana State Police Air Support and the Louisiana State University Police Department, which jointly communicated, directed, monitored and responded to the peaceful protests.

31.

Beginning on July 7, 2016, the Baton Rouge Mayor's Office of Homeland Security and Emergency Preparedness ("MOHSEP") conducted daily 9:00 a.m. briefings, which were attended by the Baton Rouge Police Department, the Louisiana State Police and other law enforcement agencies.

32.

On Friday, July 8, 2016,  a Baton Rouge Police Department Captain sent an e-mail to BRPD Incident Commander Kenneth Martin and other officers containing the text of City Ordinance 11:297 – Simple Obstruction of a highway of commerce and State statute La. R.S. 49:97 – Simple Obstruction of a highway of commerce.

33.

On July 9, 2016, Baton Rouge Police Department Officers circulated two versions of the pre-printed Affidavits of Probable Cause; one version for violation of La. R.S. 14:97 and one version for violation of La. R.S. 14:97 and resisting arrest.

34.

BRPD officers Glen Hutto, Chris Johnson, Adam Cheney and Jimmy Nicholson were involved in preparing the false Affidavits of Probable Cause, which was used on July 10, 2016 for Max Geller's arrest, which includes the distinctive typographical error "**Resistin An Officer**".

35.

The MOHSEP Briefings document the coordination and agreed upon tasks of law enforcement agencies throughout the Baton Rouge protests.

36.

The MOHSEP Briefings evidence the conspiracy regarding the Affidavits of Probable Cause.

37.

The MOHSEP Briefings confirm the agreements, policies and practices of the Defendants to unconstitutional suppress the protests.  See July 9, 2016 Briefing ("Issues from Sgt Walker: "Patrol the media!  Don't allow them to move in and out through officers with their lights, etc. during

protest. Perimeter Support! Control the crowd and provide perimeter support so there are no open ends.")

38.

The July 10, 2016 MOHSEP Briefing confirms the agreements between law enforcement agencies – "Contacted Sheriff Associations and now receiving assistance from Livingston Parish, Calcasieu Parish, and Ascension Parish Sheriff's Offices."

39.

The protests continued Friday, July 8, Saturday, July 9 and Sunday, July 10, 2016. Throughout the protests, the Baton Rouge Police Department, the Louisiana State Police, the individually named defendants, and other law enforcement officers and agencies to be determined during discovery, responded in a militarized and aggressive manner. BRPD, LSP and other officers, including the individually named defendants dressed in military gear, with gas masks, shin guards, face shields, brandishing assault weapons alongside heavy military vehicles advanced against protestors. Baton Rouge Police Department, Louisiana State Police and other law enforcement officers threatened non-violent protestors by pointing their weapons directly at them.[13]

40.

On July 10, 2016, a peaceful, youth-led march to the State Capitol was organized. Max Geller and other participants marched from a church to the Capitol, and then listened to speeches on the steps of the Capitol building. Max Geller attended speeches near the State Capitol building and then walked with other protestors along the designated route for the march. Afterwards, the

---

[13] See Promise of Justice Initiative, **Punished Protestors in Baton Rouge,** July, 2017; Declarations filed in *North Baton Rouge Matters v. City of Baton Rouge*.

participants marched back down Government Street. When they reached the intersection of Government Street and East Boulevard, they had to stop because BRPD, LSP and other law enforcement officers had set up a roadblock. The marchers were directed to get off of Government Street. Max Geller and other protesters walked to the intersection of East Boulevard and France Street, arriving at that location about 6:00 p.m.

41.

At that time, no vehicles were travelling on the streets at that location, other than police vehicles, because BRPD, LSP and other law enforcement officers blocked vehicles from entering from Government onto East Boulevard for safety and law enforcement purposes.  BRPD, LSP and other law enforcement officers also blocked a part of France Street and another side street to keep protestors from walking toward the Interstate. Officers from the Baton Rouge Police Department, the Louisiana State Police, the Calcasieu Sherriff's Office and other law enforcement agencies, including but not limited to LSP officers Jacob Brown and Beaux Comeaux, BRPD officers Darron Leach, Kenneth Martin, Ken Camallo, James Cutrer, Keith Wilson, Jason Dohm and Seth Sinclair were present at the July 10, 2016 protests.

42.

Around 6:00 p.m., protestors and legal observers saw law enforcement officers staging at the end of Europe Street.[14]  Shortly thereafter approximately 40 to 50 police officers formed a military-like formation on France Street, including an armored vehicle operated by an officer with a rifle.[15]

---

[14] Affidavit of Hannah Adams, *NRBM,* R. Doc. 2-3 ¶ 5.
[15] *Id.* at ¶ 6.



43.

The law enforcement officers, including BRPD, LSP and other law enforcement agencies proceeded down France Street towards East Boulevard in formation with an armored vehicle, assault rifles, rubber bullet guns, gas masks, shields, and a vehicle-mounted Long-Range Acoustic Device" ("LRAD"). An LRAD is a weapon which creates a painfully loud sound.[16]

44.

Max Geller and the other protestors were now surrounded by law enforcement in three directions, as shown on the drawing below. Max Geller complied with directives from police officers and moved to the edge of the street.

---

[16] Affidavit of Hannah Adams, *supra*, at ¶ 6.



45.

Max Geller and other protestors locked arms and stood in a line peacefully.

46.

Trooper Brown, BRPD Officer Abraham Wilson and other law enforcement officers were directed by presently unknown law enforcement officers to arrest protestors for violating La. R.S. 14:97 via law enforcement radio.  See Interop Transcript. ("Also, note that the arrests will be for obstruction of a public passage.  Obstruction of a public passage."). Trooper Brown, BRPD Officer Abraham Wilson and other law enforcement officers were directed by presently unknown law enforcement officers to proceed with arrests, despite not having Affidavits of Probable Cause at the scene, via law enforcement radio.  Those commands resulted in BRPD Office Abraham Wilson

attesting to the facts that purportedly supported Max Geller's arrest, without having witnessed his conduct.  See Interop Transcript.[17]

47.

On information and belief, the LSP, BRPD and other law enforcement officers targeted Mr. Geller to be assaulted and arrested because he was video recording police officers' conduct. A presently unidentified law enforcement officer can be seen in the video entitled **BRPD Terrorizes Nonviolent Protestors – 07.10.16** (Manual Deposit) at 3:40 through 4:03 motioning LSP Trooper Brown, a BRPD and a LSP officer to go toward Max Geller, which was before the mass arrest of peaceful protestors. BRPD, LSP and other law enforcement officers in riot gear approached Max Geller and yelled aggressively at him.  Mr. Geller was trying to video record the protests with his cell phone at that moment.

48.

At about 6:30 p.m., multiple police officers, including but not limited to, Louisiana State Police Trooper Jacob R. Brown, an unidentified Louisiana State Police Officer and an unidentified Baton Rouge Police Officer Roe charged the line of protestors and tackled Max Geller. Louisiana State Police Trooper Jacob R. Brown, an unidentified Louisiana State Police Officer and an unidentified Baton Rouge Police Officer Roe threw Max Geller to the ground, slammed his head into the ground, held him down with a knee hold and kicked Mr. Geller. He was struck on the head

---

[17]    "There are no, there's no PC paperwork out here on the scene on Government.  So, if we can get somebody to run us some from headquarters."

"Copy, nothing in the van?"  "We have just the RAP.  If we're gonna just RAP them and bring them back there for the PCs, we can do that."

"Y'all need to RAP the PC from here?"

"What's holding us up now is we don't have anywhere to put our 15s.  When we get a bus here we can start effecting arrests for all these people that refuse to get out of the roadway."

"Command to Browning.  Just hand them over to us, let us identify them, and we will sort that out later.  Too much going on."

and injured by officers. The assault upon Mr. Geller is shown in the video entitled **BRPD Terrorizes Nonviolent Protestors – 07.10.16** at 3:40 through 4:03, Exhibit 8, Manual Deposit.[18] *See also* Declaration of Max Geller, *North Baton Rouge Matters v. City of Baton Rouge*, U.S.C.D. M.D. La., No. 3:16-cv-463, Document 2-6.[19]  The officers who were on top of Max Geller holding him down, shouted "stop resisting".  Mr. Geller replied "I'm not resisting.  I'm just really scared."

49.

Max Geller was arrested on charges of simple obstruction of a highway of commerce, per La. R.S. 14:97[20] and resisting an officer, per La. R.S. 14:108.[21] He was arrested and charged with obstruction of a highway after law enforcement officers had closed the public highway.  Any reasonable law enforcement officer would have known that there was no basis to charge Mr. Geller under La. R.S. 14:97, since there was no through traffic to obstruct, and therefore there could be no practical violation of La. R.S. 14:97.

---

[18]  A copy of the video **BRPD Terrorizes Nonviolent Protestors – 07.10.16**  was submitted to the Court on a CD-ROM as Exhibit 8 with a Notice of Manual Attachment and a Motion for Leave.  This video was also incorporated into the complaint in *Blair Imani v. City of Baton Rouge*, U.S.D.C. M.D. La., No. 3:17-cv-439, on page 28, footnote 29, which includes a link to access the video via Drop Box.

[19] Declaration of Sophie Kosofsky, *North Baton Rouge Matters v. City of Baton Rouge*, U.S.C.D. M.D. La., No. 3:16-cv-463, Document 2-7, Paragraph 13, page 2.

[20] "Simple obstruction of a highway of commerce is the intentional or criminally negligent placing of anything or performance of any act on any railway, railroad, navigable waterway, road, highway, thoroughfare, or runway of an airport, which will render movement thereon more difficult." La. R.S. § 14:97.

[21] "Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity." La. R.S. § 14:108.

51.

Presently unknown law enforcement officers lifted Mr. Geller by his arms and dragged him away from the intersection of East Boulevard and France Street.  Mr. Geller was bleeding from his head injuries and was not responsive to his friends calling to him. As the presently unknown law enforcement officers were dragging Mr. Geller near a SWAT vehicle, he was struck in the head by a rifle butt or another blunt object.

52.

Max Geller was assaulted a THIRD time by several officers, including but not limited to BRPD officers Ken Camallo, James Cutrer, Keith Wilson, Jason Dohm and Seth Sinclair, as he was moved past the SWAT vehicle toward the protestor processing area, as shown in the video entitled "**DeSalvo 7-10-16 East Blvd protest videos (3).MOV**", which was produced by the City / Parish of Baton Rouge, Manual Attachment.  The restraint Mr. Geller appears at 1:00 through 1:40. Five or more, unidentified officers forced Mr. Geller to the ground while he was screaming.

53.

The presently unknown law enforcement officers who initially held Mr. Geller transferred him to other police officers who dragged him to an area where several protestors were being held which was about one block away from the intersection of East Boulevard and France St. Mr. Geller was ordered by the presently unknown law enforcement officers to sit on the ground, while still bleeding and disoriented. Mr. Geller was treated for multiple injuries, including a concussion, and received stiches for his head wounds at Our Lady of the Lake Hospital.  Presently unknown law enforcement officers transported Mr. Geller from the hospital to the East Baton Rouge Parish Prison, where he was incarcerated.

54.

BRPD officer Abraham Wilson and other presently unknown law enforcement officers did not advise Mr. Geller of his Miranda rights, which is confirmed by the Baton Rouge Police Department's Arrest Record for Mr. Geller on which the boxes for "Miranda Warning Given – Orally – Waiver #_____" are not completed.  Max Geller was not informed of the charges against him until he was released.

55.

Baton Rouge Police Officer Abraham Wilson (P 10431) was assigned to the Prisoner Processing Team and prepared the paperwork for Mr. Geller's arrest. BRPD Officer Abraham Wilson was at the Processing Area near East and France. BRPD Officer Abraham Wilson signed the Affidavit of Probable Cause regarding Mr. Geller.

56.

Mr. Geller's affidavit of probable cause was facially false and contradictory for many reasons including:

a. **No Parking Lots.** The Affidavit of Probable Cause for Mr. Geller states  "Protesters assembled at provided parking areas and in surrounding parking lots." There is no parking lot at East and France.

b. **Wrong Address for BRPD HQ.** The Affidavit has "9000 Airline Highway" crossed out and replaced with "500 East Blvd." This renders these affidavits even more contradictory, because the affidavits then read "in the vicinity of Baton Rouge Police Department's Headquarters located at 500 East Blvd." – which is not the BRPD Headquarters' location.

c. **Felonious Misdemeanors.** The affidavit states "Defendant did knowingly and feloniously" violate R.S. 14:97 or 14:100.1. Both those statutes, however, describe

misdemeanors.

d. **False Statement About Miranda Rights.** The affidavit says Mr. Geller was "verbally advised of their rights per the Miranda ruling." This is false – Mr. Geller was not read his *Miranda* rights.

57.

The Baton Rouge Police Department's Arrest Record Narrative, prepared by BRPD Officer Abraham Wilson states,

> "On July 10, 2016 at 500 East Blvd, the reporting officer was assigned to the prisoner processing area for the protest events in Baton Rouge, LA. The Mobile Field Force officers brought the listed arrestee to the processing table and turned the individual over to the processing team. Officer completed the necessary paperwork and the arrestee was booked into EBR Parish prison for the listed charge(s)."

58.

The Affidavit of Probable Cause regarding Max Geller's arrest is identical to the Affidavits of Probable Cause for many other protestors, except that "9000 Airline Highway" was crossed out and "500 East Blvd" was written in by hand. The Affidavit of Probable Cause also states that Mr. Geller was verbally advised of his Miranda rights, which is contrary to his Arrest Record.

59.

The Baton Rouge Police Department and other law enforcement agencies' preparation and use of a pre-filled out Affidavit of Probable Cause, that lacks any details of Mr. Geller's activities, location and arrest is evidence of their intent and conspiracy to deprive Mr. Geller of his civil rights, by knowingly signing and submitting a false Affidavit of Probable Cause to the 19th Judicial District Court.

60.

Mr. Geller was strip searched and moved into a cell in the General Population area of the East Baton Rouge Parish Prison, despite his obvious injuries.

61.

Mr. Geller was released from the East Baton Rouge Parish Prison on July 11, 2016 at approximately 4:00 p.m., after a friend posted bond.

62.

Mr. Geller has suffered and continues to suffer nightmares, recurring anxiety and severe emotional distress as a result of being arrested, assaulted and battered by defendants. Mr. Geller lost consciousness, suffered a concussion, multiple, bleeding cuts and abrasions to his face and head, injuries to his ribs and injuries to his arms and shoulders.

63.

Mr. Geller has obtained medical treatment, physical therapy and counselling for his concussion, head injuries, rib injuries and other injuries.  He continues to be under the care of physicians and a psychologist.

64.

The conduct of Louisiana State Police Trooper Jacob Brown, Baton Rouge Police Department Officers Ken Camallo, James Cutrer, Keith Wilson, Jason Dohm and Seth Sinclair and other unknown officers has resulted in scar tissue forming around Mr. Geller's elbow tendons, which has been diagnosed as "lateral epicondylitis," which may require future medical treatment.. Mr. Geller's reputation and potential future income have been harmed by his false arrest and being charged with resisting arrest and obstructing a highway, which are on his criminal record.

## CAUSES OF ACTION

## COUNT 1

**Claim for Damages and Other Relief Pursuant to 42 U.S.C. Section 1983**
**For Deprivation of Civil Rights Under Color of Law in Violation of the First Amendment,**
**Fourth Amendment, Eighth Amendment, Fourteenth Amendment**

65.

42 U.S.C. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

66.

Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, Louisiana State Police Lt. Commeaux, the foregoing individually named defendants and other to be identified officials and law enforcement officers, created and implemented policies, under color of law, to respond to peaceful protests with violent excessive force, false arrests and imprisonment of protestors, including Max Geller, without probable cause on charges of violating La. R.S. 14:97 and La. R.S. 14:108.

67.

The named defendants violated Mr. Geller's First Amendment right to record the police officers' response to the Baton Rouge protests. *See American Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 595, 596 (7th Cir. 2012).

68.

Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, Lt. Commeaux and the other Supervisor Defendants promulgated, adopted and implemented policies, practices and procedures, which have resulted in the deprivation of the civil rights of Max Geller under color of law and in violation of the U.S. Constitution, federal law and state law.  Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, Lt. Commeaux and the other Supervisor Defendants through their employees, officers and agents acted intentionally and with deliberate indifference to the violation of the civil rights of Max Geller.  Mr. Geller is entitled to damages and other relief pursuant to 42 U.S.C. Section 1983.

69.

There is a long history of many, repeated constitutional violations the Baton Rouge Police Department, the Louisiana State Police and other Louisiana law enforcement agencies against protestors and arrestees, such as Mr. Geller. *In Cox v. Louisiana,* 379 U.S. 536 (1965), the United States Supreme Court reversed the conviction of a peaceful protestor arrested during a march on a street near the Louisiana State Capital on a charge of obstructing public passages, under La. R.S. 14:100.1.[22] The Court held that "it is clear that the practice in Baton Rouge allowing unfettered discretion in local officials in the regulation of the use of the streets for peaceful parades and meetings is an unwarranted abridgment of appellant's freedom of speech and assembly secured to him by the First Amendment, as applied to the States by the Fourteenth Amendment."  *Cox v.*

---

[22] "No person shall willfully obstruct the free, convenient, and normal use of any public sidewalk, street, highway, bridge, alley, road, or other passageway, or the entrance, corridor, or passage of any public building, structure, water craft, or ferry, by impeding, hindering, stifling, retarding, or restraining traffic or passage thereon or therein." La. R.S. § 14:100.1

*Louisiana*, 379 U.S. at 558.  The Supreme Court and the Fifth Circuit have repeatedly held that arresting peaceful civil rights protestors for blocking streets was unconstitutional.[23]

70.

*Cox v. Louisiana* continues to uphold the rights of peaceful protestors to be free from arrest for blocking streets and public places. *See Occupy Columbia v. Haley*, 783 F.3d 107, 125 (4th Cir. 2013) ("In light of the case law from this circuit and from the Supreme Court, it was clearly established on November 16, 2011, that arresting Occupy Columbia for protesting on State House grounds after 6:00 p.m. was a First Amendment violation.  Accordingly, at this stage, Appellants are not entitled to qualified immunity."). *See also Papineau v. Parmley*, 465 F.3d 46, 56 (2nd Cir. 2006) (*opinion by Sotomayor, C.J.*) ("the [Supreme] Court has repeatedly held that police may not interfere with orderly, nonviolent protests merely because they disagree with the content of the speech or because they simply fear possible disorder.")

71.

Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, Lt. Commeaux and the other Supervisor Defendants created and implemented policies concerning responding to protests, and use of force that were so deficient that the policies themselves were a repudiation of constitutional rights and were the moving force of the constitutional violations.  *See Cleveland v.*

---

[23] *See e.g. Edwards v. South Carolina*, 372 U.S. 229 (1963); *Shuttlesworth v. Birmingham*, 382 U.S. 87 (1965); *Gregory v. Chicago*, 394 U.S. 111 (1969).  *See also N.A.A.C.P. v. Thompson*, 357 F.2d 831, 841 - 847 (5th Cir. 1966) (ordering entry of injunction prohibiting City of Jackson, Jackson Police Department and officials "[f]rom denying to Negro citizens the right to peacefully protest against racial discrimination in the city of Jackson, Mississippi, by peacefully walking upon the public sidewalks of the city of Jackson, observing all traffic signals, walking close to the building line or close to the curb so as not to interfere with or obstruct other pedestrian traffic on the sidewalk, and peacefully assembling in front of any Federal, State, County or Municipal building and speaking out against said discrimination for a reasonable period of time, when traffic to and from places of business or employment is not at its peak, and in such manner as not to block entrances thereto or exits therefrom and as not to unduly disrupt the public peace, and as not to deprive the public of adequate police and fire protection.").

*Gautreaux*, No. 15-744 (M.D. La. 8/1/16); 2016 U.S. Dist. Lexis 100012, at page *39. Mayor

Holden, Chief Dabadie, the City / Parish of Baton Rouge, Lt. Commeaux and the other Supervisor

Defendants had actual knowledge of the repeated deprivations of civil rights of arrestees during

the July 6 through July 9, 2016 protests, and knew that further excessive use of force and false

arrests were likely to occur. Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, Lt.

Commeaux and the other Supervisor Defendants failed to correct the policies of aggressive

responding to the peaceful protests and falsely arresting protestors for violating La. R.S. 14:97 and

knew that their conduct was in violation of plaintiff's constitutional rights and acted with deliberate

indifference, conscious disregard, gross disregard or reckless disregard for Mr. Geller's rights.

Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, Lt. Commeaux, the other

Supervisor Defendants and the Officer Defendants' actions and omissions were objectively

unreasonable and contrary to clearly-established law, such that none of the named defendants are

entitled to qualified immunity or statutory immunity.

72.

Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, Lt. Commeaux, the other

Supervisor Defendants and the Officer Defendants arrested and charged or ordered the arrest of

Max Geller pursuant to ordinances and statutes that are unconstitutionally vague, are

unconstitutional as applied and prohibit conduct that is protected by the United States Constitution,

including, but not limited to, La. R.S. 14:97.  *See Edwards v. South Carolina*, 372 U.S. 229 (1963)

(reversing peaceful protestors' convictions for breach of the peace, when they did not obey a police

order to disperse).[24] A reasonable law enforcement officer could not have a good faith belief that

---

[24] "The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic is a fundamental principle of our constitutional system. A statute

arresting Max Geller for obstruction of a closed  highway, per La. R.S. 14:97[25] would be a

constitutional exercise of police power. See *Lusk v. Roberts*, 611 F. Supp. 564, 570 (M.D. La. June

4, 1985); 1985 U.S. Dist. Lexis 19227, *13 (copy attached, Exhibit "ii"). There was also no basis

for charging Mr. Geller with resisting arrest.  Since there was no probable cause for Mr. Geller's

arrest, he "was entitled to resist the unlawful arrest and to use reasonable force in doing so, under

either federal or state law." *Lusk v. Roberts*, 611 F. Supp. at 571; 1985 U.S. Dist. Lexis 19227,

*18.

73.

Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, Lt. Commeaux and the

other Supervisor Defendants have enforced, promoted, authorized and sanctioned the BRPD and

the LSP's custom and practice of using excessive force when policing protests, including the

unprovoked and unjustified use of baton or fist strikes, excessively tight handcuffs, and suffocating

neck and choke holds. Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, Lt.

Commeaux and the other Supervisor Defendants, and the other named defendants' policy makers

approved and authorized the named defendants' tactics, policies, practices and customs, as

evidenced by their statements during and after the July 6 through 11, 2016 mass arrests.[26]  Mayor

---

which upon its face, and as authoritatively construed, is so vague and indefinite as to permit the punishment
of the fair use of this opportunity is repugnant to the guaranty of liberty contained in the Fourteenth
Amendment." *Edwards v. South Carolina*, 372 U.S. 229, 238 (1963).

[25] "Simple obstruction of a highway of commerce is the intentional or criminally negligent placing of
anything or performance of any act on any railway, railroad, navigable waterway, road, highway,
thoroughfare, or runway of an airport, which will render movement thereon more difficult." La. R.S. §
14:97.

[26] See Andrea Gallo, **Mayor Kip Holden: "It has been hell" after Alton Sterling shooting in Baton
Rouge** (The Advocate, July 12, 2016) ("Holden also said 'there are lessons to be learned on both sides'
about the Baton Rouge Police Department's response to protestors in the past week.  Protestors have
complained about police wearing riot gear and being aggressive, but Holden said protestors should not
antagonize the police.")*;*  MOHSEP July 12, 2016 Briefing ("History was made Saturday with Baton Rouge
having the most arrests in the country during one protest.  More than 100 arrests." . . . "From the numbers

Holden, Chief Dabadie and BRPD officers justified the false arrests and militaristic law enforcement response by claiming that "outside agitators" were protesting.[27] The First Amendment does not restrict protestors' civil rights based upon where they live.

74.

The City of Baton Rouge, East Baton Rouge Parish, Mayor Holden, Chief Dabadie, Louisiana State Police Trooper Brown, and the other named Supervisor Defendants have also promoted, authorized and sanctioned BRPD and LSP's custom and practice of using kettling – or penning – of protestors exercising protected First Amendment rights without adequate notice or opportunity to disperse.

75.

The City of Baton Rouge, East Baton Rouge Parish, Mayor Holden, Chief Dabadie, Louisiana State Police Trooper Brown, and the other named Supervisor Defendants have inadequately trained, supervised, and disciplined BRPD and LSP officers with respect to their officers' use of kettling, neck and choke holds and excessive force at large protest events and have repeatedly had notice that BRPD and LSP training and officer supervision were inadequate and likely to result in constitutional violations based on multiple incidents of excessive force, false arrest and other misconduct against protestors at large protest events dating back to at least 1965. Thus the City of Baton Rouge, East Baton Rouge Parish, Mayor Holden, Chief Dabadie, Louisiana State Police Trooper Brown, and the other named Supervisor Defendants ratified the unsafe and

---

of arrests Saturday, it was mostly protestors from Baton Rouge and New Orleans. – However, Sunday's protests included people from other parts of the country.  They have participated in protests elsewhere and assumed they could get away with that behavior here.").

[27] See Campbell Robertson and Frances Robles, **Escalating Discord Between Police and Protestors Strains Baton Rouge** (The New York Times, July 11, 2016) ("Like other city and state officials, including the Louisiana governor, Chief Dabadie attributed the confrontations in Baton Rouge to outsiders. 'I think that out-of-town agitators are coming in here for that reason to agitate us and to agitate the crowd,' he said in an interview in his office. 'I don't feel like our department is agitating anything.'").

unconstitutional treatment of protestors by their knowledge of, participation in, or deliberate indifference to such action, as well as the failure to discipline or hold misbehaving officers accountable. In these failures, the City of Baton Rouge, East Baton Rouge Parish, Mayor Holden, Chief Dabadie, Louisiana State Police Trooper Brown, and the other named Supervisor Defendants have been deliberately indifferent to the rights of protestors, and these failures and policies are the moving force behind, and direct and proximate cause of, the constitutional violations suffered by Mr. Geller.

76.

As a direct result of the Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, Lt. Commeaux, the other Supervisor Defendants and Officer Defendants' failures and policies as described herein, Mr. Geller suffered damages, including physical injury, severe emotional distress, fear and apprehension and concern for his own safety.

## **COUNT 2**

### **Claim for Punitive Damages Under 42 U.S.C. Section 1983**

77.

Chief Dabadie, Mayor Holden, the City / Parish of Baton Rouge, Louisiana State Trooper Jacob R. Brown, and the other named defendants conduct demonstrated reckless or callous indifference to Max Geller's constitutional rights, or was motivated an unlawful intent to deprive Max Geller of his First Amendment, Fourth Amendment and Eighth Amendment rights.

78.

Louisiana State Trooper Jacob Brown, an unknown BRPD officer, and unknown LSP officer's use of excessive force caused physical injuries and severe emotional distress to Max Geller.

79.

Louisiana State Trooper Jacob Brown, an unknown BRPD officer, and unknown LSP officer and other unknown officers' conduct evidenced a reckless disregard for the health and safety of Mr. Geller.

80.

Mr. Geller was vulnerable when he was attacked without provocation by heavily-armed officers.  He became especially vulnerable after the assaults by officers caused a concussion and other injuries.

81.

Louisiana State Trooper Jacob Brown, an unknown BRPD officer, and unknown LSP officer's use of excessive force upon Mr. Geller after he had been immobilized was objectively unreasonable.  See *Gomez v. Gautreaux*, No. 14-169 (M.D. La. 3/6/15); 2015 U.S. Dist. Lexis 27564, at page *6 (holding that "once he was handcuffed and immobilized, a reasonable officer would not have thought it was lawful to continue kicking and punching the suspect.").

82.

Louisiana State Trooper Jacob Brown, an unknown BRPD officer, and unknown LSP officer's attack on Max Geller and deprivation of his civil rights were not isolated incidents, as shown by the videos of Mr. Geller's assaults, arrest, the photographs and videos of other protestors' arrests, the declarations filed of *North Baton Rouge Matters v. Baton Rouge*, the long history of violating protestors' rights, the named defendants' use of identical pre-filled out Affidavits of Probable Cause for dozens of protestors, the attacks upon many other protestors, and the arresting of more than 100 protestors on the charge of obstruction of a highway.

83.

The deprivation of Max Geller's civil rights was the result of an intentional, conspiracy to deprive the Baton Rouge protestors of their rights to assemble and present their grievances concerning the law enforcement policies, practices and conduct after Alton Sterling's death, as alleged herein.

84.

Max Geller is entitled to punitive damages, under 42 U.S.C. Section 1983, due to the reprehensibility of Louisiana State Trooper Jacob Brown, an unknown BRPD officer, and unknown LSP officer, and other unknown officers' assaults upon Mr. Geller and false arrest. *See Hill v. Kilbourne*, 157 F.Supp.3d 345 (M.D. La. 2015).

### **Count 3**

**Conspiracy to Deprive Plaintiff of Civil Rights in Violation of 42 U.S.C. Section 1985(3) and 42 U.S.C. Section 1983**

.                                                       85.

42 U.S.C. Section 1985(3) prohibits conspiracies to deprive persons of their civil rights.[28] Each of the defendants, Chief Dabadie, the City of Baton Rouge, East Baton Rouge Parish, Mayor Holden, Louisiana State Police Trooper Jacob R. Brown, and the other named defendants, who are members of two  separate law enforcement agencies, acting in concert with one another and with other presently unknown co-conspirators, conspired to commit the deprivation of protestors'

---

[28] "If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . [I]n any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. Sec. 1985(3).

constitutional rights by entering into an agreement in July 2016 to unlawfully assault, arrest, detain and imprison Baton Rouge Protestors, including Max Geller, knowing there was no probable cause to arrest and imprison Mr. Geller and other protestors, and for the purpose of impeding plaintiff from exercising his First Amendment rights by engaging in non-disruptive speech in support of an issue of pressing public importance, as alleged herein. The named defendants accomplished this goal by enforcing statutes which no reasonable police officer could believe were constitutional as implemented, submitting a false affidavit of probable cause, and approving unsupported charges against Max Geller, which resulted in his false arrest and unlawful imprisonment.

86.

In furtherance of the conspiracy BRPD Officers Glen Hutto, Chris Johnson, Adam Cheney, Jimmy Nicholson, Abraham Wilson, BRPD Incident Commander Keith Martin, and other law enforcement officers, intentionally and knowingly prepared, signed and submitted a false Affidavit of Probable Cause regarding Mr. Geller's arrest to the 19th Judicial District Court. On information and belief, Chief Dabadie and Mayor Holden directed, approved, ratified and acquiesced in the preparation and use of the false Affidavits of Probable Cause. The Affidavit of Probable Cause for Mr. Geller and many other protestors, charging Mr. Geller and many other protestors with violating La. R.S. 14:97, were prepared in advance with blanks for names and times of arrest.

87.

A necessary element of 14:97 is that the suspect actually blocks traffic. This was impossible, as law enforcement officers had blocked off both East Boulevard and France Street with lines of officers several rows deep. The execution of this tactic served to create an impossible trap for the protestors, including Max Geller, who could neither leave or stay and therefore were arrested by the hundreds in an actual deprivation of their rights.

Three frames from a video taken by Plaintiff Victor Onuoha show lines of police officers blocking off East Blvd. (left and right) and France St. (middle). The irregular shapes are due to the fact that the phone was tilted at an angle.

  

## COUNT 4

**Neglecting to Prevent Deprivation of Civil Rights Under 42 U.S.C. Section 1986 and Bystander Liability**

88.

42 U.S.C. Section 1986 provides, in relevant part, "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action."

89.

Chief Dabadie, Mayor Holden, the City / Parish of Baton Rouge, LSP Lt. Commeaux and Louisiana State Trooper Jacob R. Brown, the Supervisor Defendants and Officer Defendants knew that protestors' civil rights were likely to be violated due to the many excessive uses of force and false arrests during July 6 through 9, 2016, and had the power to prevent or aid in preventing the

42

deprivation of Max Geller's civil rights but stood by without intervening to prevent the violation of Mr. Geller's constitutional rights under the First, Fourth and Fourteenth Amendments, even though they had the knowledge, opportunity and duty to do so.

90.

On July 10, 2016 and throughout the Baton Rouge Protests, the named defendants were in frequent communication and received information about the law enforcement conduct and arrests via designated law enforcement radio channels (Interop 1 – Uniform Patrol, Interop 2 – the Louisiana State Patrol Mobile Field Force and Interop 3 - SWAT) and the daily MOHSEP briefings.  Defendants also exchanged intelligence reporting and status reports via the Louisiana State Analytical & Fusions Exchange (LA-SAFE) Liaison, Buren Moore Intelligence Officer of the Governor's Office of Homeland Security and Emergency Preparedness ("GOHSEP").

## COUNT 5

### Arrest Without Probable Cause in Violation of the Fourth Amendment

91.

There was no probable cause to arrest Mr. Geller for obstruction of a highway of commerce because the streets had been closed by the police officers before this arrest.  He could not have rendered movement on a road more difficult, at the time of his arrest, which is a required element for violation of La. R.S. 14:97.

92.

There was no probable cause to arrest Mr. Geller for resisting an officer.  Mr. Geller did not flee and did not resist when Louisiana State Trooper Jacob R. Brown, a presently unknown Louisiana State Trooper and a presently unknown Baton Rouge Police officer charged, brutally

engaged him in an illegally knee-to-neck hold, tackled and dragged him, as illustrated by Exhibit 1 and the video of his arrest.

93.

The Affidavit of Probable Cause signed by BRPD officer Abraham Wilson and submitted to the 19th Judicial District Court regarding Mr. Geller's arrest was a preprinted form affidavit that did not correctly describe Mr. Geller's conduct, his location, the actions of the law enforcement officers that arrested him, or his transportation of Lady of the Lake Hospital before he was incarcerated at the East Baton Rouge Parish Prison.  The Affidavit of Probable Cause also does not indicate that Mr. Geller was assaulted and taken into custody by Louisiana State Trooper Jacob R. Brown, LSP Officer John Doe Two, and Baton Rouge Police Officer Roe.

94.

The Baton Rouge Police Department and BRPD officers Glen Hutto, Chris Johnson, Adam Cheney, Jimmy Nicholson, Abraham Wilson and other law enforcement officers' preparation submission of a false affidavit to the 19th Judicial District Court removes the basis for any claim that there was probable cause for Max Geller's arrest.  On information and belief, Chief Dabadie and Mayor Holden directed, approved, ratified and acquiesced in the preparation and use of the false Affidavits of Probable Cause.

## COUNT 6

**Action for Damages and Other Relief Under 42 U.S.C. 1983
For Violation of First Amendment Rights and
Retaliation Against Exercise of Rights to Freedom of Speech and Assembly**

95.

Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, the Supervisor Defendants and the Officer Defendants violated Mr. Geller's First Amendment Rights of speech, assembly, right to petition the government and right to video record the actions of police officers, as alleged herein.

96.

Max Geller was peacefully protesting the Baton Rouge Police Department's killing of Alton Sterling to state his grievances and obtain changes to BRPD's policies and practices regarding the use of excessive force, shootings, arrests and law enforcement officers' violations of citizens' rights.

97.

Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, the Supervisor Defendants and the Officer Defendants violated Mr. Geller's First Amendment rights of speech, assembly and free association, by brutalizing, arresting and imprisoning Mr. Geller when he was exercising his First Amendment rights to assemble and petition the government.

98.

Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, the Supervisor Defendants and the Officer Defendants acted pursuant to policies, practices or customs to abuse their law enforcement authority to disturb and disrupt targeted civil political assemblies and mass

enCase 3:17-cv-00324-JWD-EWD    Document 218    01/05/21    Page 46 of 53

protests, in responding to the Baton Rouge Protests, using excessive force and falsely arresting Max Geller.

## COUNT 7

### Attorneys' Fees for Deprivation of Civil Rights Under 42 U.S.C. Section 1988

99.

Max Geller is entitled to an award of reasonable attorneys' fees and costs in this action under 42 U.SC. Section 1988 because Mr. Geller is seeking to enforce his rights under 42 U.S.C. Sections 1983, 1985 and 1986.

## Count 8

### Claim for Violation of Rights Under the Louisiana Constitutional And  False Imprisonment Under Louisiana Law

100.

Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, the Supervisor Defendants and the Officer Defendants' actions in arresting, detaining, and using force on Mr. Geller as described above interfered with his exercise of fundamental rights to speech, assembly and press, as guaranteed by Louisiana's Constitution and his state constitutional right of freedom from false arrest.

101.

Louisiana statutory immunity does not shield officials from liability for violating Max Geller's constitutional rights.  *See Poche v. Gautreaux*, 973 F. Supp.2d 658, 674 (M.D. La. 2013).  Civil Code article 2320 imposes liability upon a sheriff [or a police chief] in his official capacity (but not in his personal capacity), for the deputy's torts in the course and scope of employment." *Jenkins v. Jefferson Parish Sheriff's Office*, 402 So.2d 669, 669 (La. 1981).

46

102.

Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, the Supervisor Defendants and the Officer Defendants falsely imprisoned Max Geller without probable cause in violation of his constitutional rights.

## COUNT 9

### Claim for Malicious Prosecution Under Louisiana Law

103.

Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, the Supervisor Defendants and the Officer Defendants maliciously prosecuted Max Geller, without probable cause.

## COUNT 10

### Claim for Assault and Battery Under Louisiana Law

104.

Louisiana State Trooper Jacob R. Brown, LSP Officer John Doe Two, Baton Rouge Police Officer Roe, and Baton Rouge Police Officers , Ken Camallo, James Cutrer, Keith Wilson, Jason Dohm, Seth Sinclair and other unknown law enforcement officers committed acts of assault and battery upon Max Geller.

105.

Louisiana State Trooper Jacob R. Brown, LSP Officer John Doe Two, Baton Rouge Police Officer Roe, and Baton Rouge Police Officers , Ken Camallo, James Cutrer, Keith Wilson, Jason Dohm, Seth Sinclair and other unknown law enforcement officers committed intentional offensive contact with Mr. Geller without right, and put Mr. Geller in apprehension of such contact.

106.

Max Geller "is entitled to recover for his pendent state law claim of assault and battery. The physical attack on a private citizen, absent a valid arrest constitutes a battery." *Lusk v. Roberts*, 611 F. Supp. 564, 571 (M.D. La. 1985).

## COUNT 11

### Claim for Intentional Infliction of Emotional Distress Under Louisiana Law

107.

Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, the Supervisor Defendants and the Officer Defendants intentionally inflicted severe emotional distress upon Mr. Geller, during his assaults, arrest and imprisonment.

108.

Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, the Supervisor Defendants and the Officer Defendants' conduct, as alleged herein, was extreme and outrageous. On information and belief, Defendants knew that the emotional distress suffered by Mr. Geller would be severe. Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, the Supervisor Defendants and the Officer Defendants desired or acted with recklessness to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct. As well as using excessive force to deprive Mr. Geller of his constitutional rights and incarcerating Mr. Geller, those Defendants maliciously commenced criminal proceedings against Plaintiff using a perjured and fabricated boiler-plate Affidavit of Probable Cause.

**COUNT 12**

**Claim for Negligent Infliction of Emotional Distress Under Louisiana Law**

109.

In the alternative, Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, the Supervisor Defendants and the Officer Defendants, negligently inflicted severe emotional distress upon Max Geller during his assaults, false arrest and imprisonment.

**COUNT 13**

**Claim for Negligence Under Louisiana Law**

110.

Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, the Supervisor Defendants and the Officer Defendants were negligent in their conduct during Max Geller's assaults, false arrest and imprisonment, and are liable to plaintiff for damages pursuant to Louisiana Civil Code article 2315.

**COUNT 14**

**Claim for Vicarious Liability and Indemnity Under Louisiana Law**

111.

Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, Lt. Commeaux and the Supervisor Defendants are liable to Mr. Geller for the negligent acts and omissions of the officers and others under their direction and control pursuant to Louisiana Civil Code article 2320 and the doctrine of *respondeat superior*.

112.

Louisiana State Trooper Jacob R. Brown, LSP Officer John Doe Two, Baton Rouge Police Officer Roe and other unknown law enforcement officers' use of excessive force during the arrest of Max Geller, false arrest and incarceration renders their employers liable for damages.

113.

Louisiana law provides that public entities are obligated to pay any tort judgment for compensatory damages for which employees are liable for actions taken in the discharge of their duties that are within the scope of their employment activities.

114.

While committing the misconduct alleged in the preceding paragraphs, Mayor Holden, Chief Dabadie, the Supervisor Defendants and the Officer Defendants were public employees, such that their public employers are obligated to pay any judgments against them.

## COUNT 15

### Claim for Failure to Train and Supervise Employees Under Louisiana Law

115.

Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, Lt. Commeaux, and the Supervisor Defendants are liable to plaintiff for their negligent failure to train and supervise their officers and others under their direction and control.

## EQUITABLE AND DECLARATORY RELIEF

116.

Max Geller is entitled to and prays for equitable, injunctive and declaratory relief, including but not limited to:

A.  Entry of an Order expunging or nullifying his arrest;

B.  Entry of an Order prohibiting the named defendants from reporting Mr. Geller's arrest to other law enforcement agencies or law enforcement databases;

C.  Entry of an Order requiring the named defendants-to notify other law enforcement agencies and law enforcement databases that Mr. Geller's arrest was expunged or nullified;

D.  Entry of an order prohibiting the named defendants from reporting Mr. Geller's arrest to current or prospective employers or credit reporting agencies;

E.  Entry of an Order directing the named defendants-to return or reimburse all bonds or bail paid by Mr. Geller or by paid by others on his behalf; and

F.  Such other declaratory, injunctive or equitable relief as may be just in the circumstances.

## **DAMAGES**

117.

Plaintiff requests compensatory, nominal and punitive damages pursuant to 42 U.S.C. sections 1983, 1985 and 1986, for violations of his rights under the 1st, 4th, 8th and 14th Amendments to the United States Constitution, and for his tort claims under Louisiana law.

118.

As a direct and proximate result of the joint acts or omissions of Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, the Supervisor Defendants and the Officer Defendants, and other presently unknown law enforcement officers identified in this Complaint, Max Geller has suffered monetary and non-monetary harm including deprivation of Constitutional rights, personal injuries and loss of liberty.

119.

Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, the Supervisor Defendants and the Officer Defendants, and the other named defendants' unconstitutional and

tortious acts and omissions caused Max Geller to suffer head wounds, a concussion, arm and rib injuries, and continuing emotional distress.

120.

As a result of Mayor Holden, Chief Dabadie, the City / Parish of Baton Rouge, the Supervisor Defendants and the Officer Defendants and the other named defendants' conduct, Max Geller has suffered and is entitled to compensatory damages, nominal damages and punitive damages for:

a. Pain and suffering, past, present and future

b. Emotional distress, past, present and future

c. Medical expenses, past, present and future

d. Lost wages, past, present and future;

e. Harm to his reputation;

f. Deprivation of his civil rights; and

g. Such other damages as may be proven at trial.

121.

Plaintiff is entitled to an award of reasonable attorneys' fees and court costs, pursuant to 42 U.S.C. section 1988.

WHEREFORE, Plaintiff, Max Geller, prays for judgment against all named defendants and for an award of compensatory damages, nominal damages, punitive damages, costs and attorneys' fees, in amounts to be proven at trial, and declaratory and injunctive relief.

Respectfully submitted, November 24, 2020


  /s/ John K. Etter                

Roy J. Rodney, Jr. (La. Bar No. 2079)
John K. Etter (La. Bar No. 25042)
Rodney & Etter, LLC
935 Gravier Street, Suite 2110
New Orleans, LA 70112
Telephone: 504-483-3224
Facsimile: 504-483-2259
E-Mail: rjr@rodneylaw.com
E-Mail: jke@rodneylaw.com


## Certificate of Service

      Undersigned counsel for plaintiff hereby certifies that all counsels of record have been served with the foregoing Fifth Amended and Supplemental Complaint for Damages for Deprivation of Civil Rights via this Court's e-filing system.

      New Orleans, Louisiana, this 24th day of November 2020

  /s/ John K. Etter /            

John K. Etter